RONALD R. BENSON, APPELLANT, V. BARNES & BARNES TRUCKING, DEFENDANT AND THIRD-PARTY PLAINTIFF, NEBRASKA SECOND INJURY FUND, THIRD-PARTY DEFENDANT, APPELLEES.

354 N.W.2d 127

Filed July 13, 1984. No. 83-400.

Larry R. Taylor of Taylor, Fabian, Thielen & Thielen, for appellant.

William J. Dunn and Larry E. Welch of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellee Barnes & Barnes Trucking.

Paul L. Douglas, Attorney General, and Martel J. Bundy, for appellee Second Injury Fund.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Ronald R. Benson, an employee of

the appellee Barnes & Barnes Trucking (employer), appeals from an order entered by a three-judge panel of the Nebraska Workmen's Compensation Court which, on rehearing, reversed an earlier award entered by a single judge of the Nebraska Workmen's Compensation Court. Employer had impleaded the Nebraska Second Injury Fund, which likewise was found by the three-judge panel not to be liable to the employee. For reasons more particularly set out hereinafter, we believe that the order of the three-judge panel must be in part affirmed and in part reversed.

The transcript discloses that on June 8, 1982, Benson filed a petition in the Nebraska Workmen's Compensation Court, alleging that on July 25, 1980, while in the employment of Barnes & Barnes Trucking, he sustained an injury in an accident arising out of and in the course of his employment. Specifically, Benson alleged that while he was unloading 100-pound bags of potatoes from a truck, he stumbled over a pallet and fell backwards with a bag of potatoes. The employer filed an answer admitting that Benson was one of its employees on July 25, 1980, and that, based upon the representations made by Benson, the employer has paid to employee temporary total disability benefits for 83 weeks at the rate of $180 per week for the period October 3, 1980, through May 6, 1982, for a total of $14,940; and, further, that it has paid permanent partial disability benefits for 5 weeks at the rate of $4.63 per week, for a total of $23.15, that "it continues to pay permanent partial disability at said rate," and that it has paid medical expenses on behalf of the employee in the amount of $18,555.09. The employer denied each and every other allegation of the petition, and alleged that any disability which Benson had at the time of the filing of the answer was the result of a deteriorating condition preexisting the alleged accident. By way of further answer the employer alleged that if indeed the employee was entitled to any further compensation

or medical expense, such claim was a claim against the Second Injury Fund. The Second Injury Fund also filed an answer generally denying all of the allegations of the employee's petition and praying that the employee be placed on strict proof.

The single-judge compensation court found that the employee had established by sufficient proof that he was totally disabled and therefore entitled to an award. In its order the court divided the responsibility for compensation between the employer and the Second Injury Fund, 15 percent and 85 percent, respectively. It was from this order that the Second Injury Fund appealed; the employer elected not to appeal. On rehearing, the three-judge panel dismissed Benson's petition because it found that he had failed to prove by expert medical testimony, with sufficient certainty, that the present disability was caused by the accident which allegedly occurred on July 25, 1980. Apparently, the three-judge panel placed both the burden of proving that an accident or injury, arising out of and in the course of the employee's employment, had occurred and the burden of proving the liability of the Second Injury Fund, as though they were interrelated, upon the employee. We believe that, in so doing, the three-judge panel committed error. It appears to us that there are really two separate issues involved in this case. The first issue, raised by the employee, involves the question of whether the employee's current condition is as a result of an accident which occurred on July 25, 1980, and which accident arose out of and in the course of employee's employment. The second issue is whether the Second Injury Fund is liable for some part of the injury and resulting disability. These issues are separate and distinct and should be so viewed.

We turn, then, to what we perceive to be the first issue: Did Benson, on July 25, 1980, suffer a personal injury caused by an accident arising out of and in the course of his employment for which he is

entitled to compensation pursuant to the Nebraska workmen's compensation law? To answer this question it is necessary that we review the facts. The record discloses that prior to Benson's employment by Barnes & Barnes, Benson was employed by Missouri River Industries, Inc. On January 31, 1977, while its employee, he slipped and fell on the ice and a 2,400-pound cart of meat, which he was pulling, ran over him. As a result of the accident, he injured his back. In July of 1977 Benson underwent back surgery performed by Dr. William Smith, an orthopedic surgeon. The surgery consisted of a laminectomy on the left side at the L4-5 space. Following the surgery, the plaintiff returned to work with instructions to lift no more than 20 pounds. On February 26, 1978, Benson again slipped on a piece of cardboard and fell. In March of 1978 Dr. Smith again performed a laminectomy at the L4-5 space, this time on the right side. Following these two incidents, in September of 1978, Benson entered into a lump sum settlement with his then employer, based upon a finding that Benson had sustained a 37.5 percent disability to the body as a whole. Although he continued to experience some back pain, Benson worked at a series of truck driving jobs, none of which involved lifting.

Then, on July 25, 1980, while in the employ of Barnes & Barnes Trucking, Benson tripped on a pallet while unloading a truck and fell with a 100-pound sack of potatoes. Two days after the incident, Benson was treated by Dr. Smith in the emergency room at Methodist Hospital in Omaha, Nebraska, and was again seen and treated by Dr. Smith in August and September of 1980. Benson continued to work; however, the work Benson did was with the assistance of his wife, who also was a truckdriver. On October 3, 1980, the record reflects that Benson simply collapsed when his "legs gave out," and he fell to the floor. There was no new incident which precipitated that fall as reflected by the

record. Following this October incident, Dr. Smith once again performed a laminectomy on the L4-5 space, again on the left side, during which he removed degenerated disk material. Everyone agrees that Benson has not worked again since October 3, 1980.

While home recovering, Benson suffered two further accidents. In December 1980 he fell down a flight of stairs in his home. As a result of this accident, Benson was once more hospitalized, in February of 1981, and in July of 1981 was again operated on by Dr. Smith, at which time Dr. Smith performed a fusion to eliminate motion at L4-5 and L5-S1. Then, in October of 1981, Benson again fell down a flight of stairs in his home, and in March of 1982 a double laminectomy was performed at the L4-5 and L5-S1 spaces on the right side. Benson contended that these subsequent falls were caused by reason of his inability to walk properly and that his inability to walk properly related back to the injury which occurred on July 25, 1980, and the subsequent surgery which was necessitated by that accident.

While we recognize that in reviewing the judgment of the compensation court after rehearing, we must keep in mind that its findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong, *Taylor v. Benton*, 205 Neb. 203, 286 N.W.2d 755 (1980), we are also aware of the fact that if the judgment and order of the court is not supported by the evidence, we are required to reverse it. Neb. Rev. Stat. § 48-185 (Reissue 1978). We believe such to be the case here with regard to the question of whether Benson suffered an accident arising out of and in the course of his employment for which he is entitled to compensation. The burden of proving that he suffered an accident arising out of and in the course of his employment, entitling him to compensation, is unquestionably on the employee. In *Novotny v. Electric Hose & Rubber Co.*, 214 Neb. 216, 219, 333 N.W.2d 406, 409 (1983), we said:

Under the Nebraska Workmen's Compensation Act, the claimant has the burden of proof to establish by a preponderance of the evidence that an unexpected and unforeseen injury was in fact caused by the employment. There is no presumption from the mere occurrence of such unexpected or unforeseen injury that the injury was in fact caused by the employment.

See, also, *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 272 N.W.2d 372 (1978); *Randall v. Safeway Stores*, 215 Neb. 877, 341 N.W.2d 345 (1983). And we acknowledge that where there is knowledge of a preexisting condition, the claimant carries a greater burden of proof. In *Engel v. Nebraska Methodist Hospital*, 209 Neb. 878, 881, 312 N.W.2d 281, 284 (1981), we said: "The employee must prove the injury was not the result of the normal progression of his preexisting condition which would have been sustained even in the absence of the accident." We went on to say at 883, 312 N.W.2d at 285: "The question simply is whether the plaintiff suffered an injury arising out of and in the course of his employment which aggravated the preexisting condition and resulted in the disability."

In light of these rules it appears to us that Benson has sustained his burden. No one, including Benson's employer, seriously disputes that he suffered an accident on July 25, 1980, when he tripped over a pallet and fell with a 100-pound bag of potatoes. Moreover, no one disputes that Benson is currently totally disabled. It appears to us that it is by reason of the employer having injected the Second Injury Fund into the case that confusion as to the employee's burden has occurred. The employer argues that the medical testimony produced by Benson was insufficient to establish causation. We do not read the record that way.

On direct examination Dr. Smith, by deposition, was asked whether he had an opinion as to the cause of Benson's disability. He said that he did, and

when asked to give his opinion, testified as follows: "The disability that he has now is from the multiple surgeries that he's had and the disc herniations, and the rating that I would tie him to now is a culmination of all of these things, the recurrent injuries that he had and the subsequent surgeries." The record makes clear that the injury sustained in the July 1980 accident required surgery in October 1980. Dr. Smith candidly admitted that there was no way he could specifically separate one from the other, because the current condition was "kind of a cumulating effect." The three-judge panel concluded that Dr. Smith's testimony was speculative in nature and was insufficient to establish causation. We do not believe that to be the case.

Unlike *Taylor v. Benton, supra*, where there was evidence from which the three-judge panel could believe that even absent an alleged accident which arose out of and in the course of Taylor's employment, she nevertheless would have sustained the difficulty she in fact encountered and would have required the surgery which was performed, the evidence in this case is otherwise. Dr. Smith was not vague about the cause of Benson's total disability. He was quite specific. He said that it was the accumulation of the various injuries. That is to say, that by reason of a preexisting condition aggravated by a subsequent injury, requiring several operations, Benson was now totally disabled. There is nothing vague or indefinite about this testimony, nor is the testimony insufficient to entitle the employee to recover. For reasons known only to the employer, no expert evidence was tendered by the employer to contradict anything said by Dr. Smith. No effort was made to show that notwithstanding the second injury, Benson would have suffered whatever difficulty he ultimately suffered, and even absent the second injury, would have required the subsequent surgery and would have ultimately been totally disabled. We have never held that an injury

made worse by reason of a preexisting condition prevents an employee from receiving compensation. Quite to the contrary, we have consistently held that where an injury arising out of and in the course of employment combines with a preexisting condition to produce disability, though absent the preexisting condition no disability would have resulted, recovery can be had by the employee. See, *Chatt v. Massman Construction Co.*, 138 Neb. 288, 293 N.W. 105 (1940); *Maul v. Iowa-Nebraska Light & Power Co.*, 137 Neb. 128, 288 N.W. 532 (1939); *Dymak v. Haskins Bros. & Co.*, 132 Neb. 308, 271 N.W. 860 (1937). Once Benson established that he suffered an injury arising out of and in the course of his employment, which, together with a preexisting condition, caused his permanent and total disability, he satisfied his burden of proof. If the employer wished to show that this condition would have prevailed, notwithstanding the intervening accident, the burden was upon the employer to do so.

Recently, in the case of *White v. Western Commodities, Inc.*, 207 Neb. 75, 295 N.W.2d 704 (1980), we were confronted with a somewhat similar situation. There, the compensation court *allowed* recovery, notwithstanding the fact that the physician was unable to separate the extent of disability between an earlier service-connected disability and an employment accident. When specifically asked to separate the two, the doctor testified, "I can't separate the two." *Id.* at 84, 295 N.W.2d at 710. And, in affirming the compensation court, we noted at 86, 295 N.W.2d at 711:

"The primary purpose of the workmen's compensation act is to insure an employee against accidental injury arising out of and in the course of his employment. To accomplish this purpose the act should be liberally construed, not to find that liability exists without the required quantum of proof, but to include within the protection of the act by liberal interpretation all injuries

arising out of and in the course of the employment which the act does not clearly exclude. A strict interpretation should not be resorted to in order to accomplish such exclusion."

By dismissing the plaintiff's petition in its entirety, the three-judge panel found, in effect, that Benson had failed to prove that he was entitled to *any* compensation for medical expenses, including the substantial sum which the employer had already paid to him. While the payment by the employer does not, in and of itself, constitute an admission, nevertheless, it is difficult to perceive how the three-judge panel could find that Benson had not suffered any compensable injury or be entitled to any medical expense by reason of his fall on July 25, 1980. The evidence clearly established that this fall was compensable in some degree and, when combined with his preexisting condition, necessitated the subsequent surgery and caused the ultimate disability.

One may argue that the subsequent falls down the stairs, resulting in further disability and expense, should not be treated as a part of the accident which occurred on July 25, 1980. The record is clear, however, and the employer sought to introduce no evidence to contradict the record to this effect, that as of October 1980, Benson was already totally and permanently disabled and that his inability to properly maneuver in 1980 and 1981 was the cause of his falling down the stairs. If such was not the case, then the employer had some burden to introduce contrary evidence. The compensation court, therefore, erred in not finding that Benson had met his burden of proof and that he was entitled, at that point, to be compensated.

The second issue which must then be considered is the liability of the Second Injury Fund, if any, and, specifically, the question of who has the burden of proof with regard to this issue. While it appears that we have never before had an occasion to pass upon this question, it further appears clear to us that

a reading of the statute imposes the burden upon the employer for whose benefit the Second Injury Fund was principally created. Neb. Rev. Stat. § 48-128 (Reissue 1978) provides in part:

> If an employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, which is or is likely to be a hindrance or obstacle to his obtaining employment or obtaining reemployment if the employee should become unemployed and which was known to the employer prior to the occurrence of a subsequent compensable injury, receives a subsequent compensable injury resulting in additional permanent partial or in permanent total disability so that the degree or percentage of disability caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself; and if the employee is entitled to receive compensation on the basis of the combined disabilities, the *employer* at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability, and for the additional disability the employee shall be compensated out of a special trust fund created for that purpose, which sum so set aside shall be known as the Second Injury Fund.

(Emphasis supplied.) The purpose of the statute is clear. If an employer, knowing that an employee has a preexisting condition, agrees nevertheless to employ the individual and the employee subsequently suffers a second injury which, but for the preexisting condition, would have produced a lesser degree of injury and disability and, therefore, a smaller payment by the employer, then the employer is only required to pay for that portion of the total injury which would have occurred without the preexisting condition. The balance is to be paid out

of the Second Injury Fund. It is, therefore, in the interests of the employer to establish that the extent of disability now experienced by the employee was increased by the preexisting condition and, therefore, the employer should only be required to pay for a proportion of the disability.

As we have already noted, an employee is entitled to full compensation, notwithstanding the fact that his present disability is the result of an aggravated preexisting condition. Absent the provisions of § 48-128, an employer would be liable for all of the injury. Therefore, the general rules with regard to burden of proof seem to demand that the burden of proving apportionment between the portion of the injury for which the employer is liable and the portion for which the Second Injury Fund is liable must be on the employer. The employee is not interested in who pays him the money, so long as he receives it. And he is entitled to receive compensation notwithstanding the existence of a preexisting condition. To therefore impose upon the employee the burden of proving both that he suffered an accident arising out of and in the course of his employment and also what proportion should be paid by the employer and what portion by the Second Injury Fund is to impose upon the employee a burden which should not be placed on him.

Just noting how the Second Injury Fund is made a party to this case should make it clear as to where the burden lies. It was not Benson who made the Second Injury Fund a party to this action but, rather, the employer who did so, saying, in effect, that if there is liability on the employer, then a portion of it should be paid by the Second Injury Fund. And, in fact, when the single-judge court entered an award assessing liability to the employer in the amount of 15 percent and liability to the Second Injury Fund in the amount of 85 percent, the employer chose not to appeal. The employer's joining of the Second Injury Fund is in every respect akin to mak-

ing the Second Injury Fund a third-party defendant, and the rules with regard to third-party practice should apply here as everywhere else. See *Mobil Oil Corp. v. Grantham*, 200 Neb. 782, 265 N.W.2d 669 (1978), in which this court held that a defendant who cross-claims has the burden of proving the facts necessary to recover on its cross-claim. The burden of proof is generally upon the party who, absent meeting his burden, is not entitled to relief. *Empire State Building Co. v. Bryde*, 211 Neb. 184, 318 N.W.2d 65 (1982). In the instant case it is the employer who will suffer if evidence of apportionment is not introduced, and, therefore, it is the employer who should assume the burden of proving such facts. We therefore hold that the burden of proof necessary to establish apportionment under § 48-128, the Second Injury Fund statute, is upon the employer who seeks the benefits of that statute. See, *Masotto v. Atlantic & Pac. Tea Co.*, 70 A.D.2d 714, 416 N.Y.S.2d 433 (1979); *Texas Employers' Ins. Ass'n v. Haunschild*, 527 S.W.2d 270 (Tex. Civ. App. 1975); *Scott v. Day and Zimmerman, Inc.*, 215 Kan. 782, 529 P.2d 679 (1974). The three-judge panel was correct in determining that the employer had failed to prove apportionment and, therefore, should have dismissed the petition against the Second Injury Fund. It committed error, however, in not entering an award for Benson based upon the evidence. The judgment of the three-judge panel of the compensation court is therefore affirmed insofar as it found the Nebraska Second Injury Fund not liable in this case and is reversed and remanded with directions to enter an award on behalf of Benson consistent with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.