LESLIE ENGEL, APPELLEE, V.
NEBRASKA METHODIST HOSPITAL, APPELLANT.

312 N.W.2d 281

Filed November 6, 1981.   No. 43926.

Kirk S. Belcha and Richard E. Putnam of Baird, Holm, McEachen, Pedersen & Hamann for appellant.

James R. Welsh and Robert V. Roach of Welsh, Sibbernsen & Bowen for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

This is an appeal from an award made to the plaintiff Engel by a three-judge panel of the Nebraska Workmen's Compensation Court on rehearing. The award was $168.10 per week so long as the defendant remained permanently disabled. The employer, Nebraska Methodist Hospital, appeals to this court. We affirm.

There is no dispute as to the evidence. Engel was employed by the hospital as a maintenance supervisor. At the time of the alleged injury on December 31, 1979, he

and two other employees, in the course of the employment, lifted a carpet weighing about 100 pounds. Plaintiff testified that at the time a severe pain shot into his lower back and down his legs. The plaintiff's condition worsened after the incident and had not improved at the time of trial. Since the incident he has been unable to engage in any kind of physical activity, including activities he engaged in prior to the accident such as lawnmowing, snow removal, changing tires, and the work required in his hospital employment. He had not been able to return to work at the time of trial.

In 1967, while serving in the Army in Vietnam, he was wounded in the back and other parts of the body by an exploding mortar shell. As a consequence, he draws a veteran's disability pension. The evidence further shows that he has a spondylolysis, a congenital defect in the bony connection between vertebrae. Such a condition is usually painless until affected by physical trauma. Before he was wounded, the spondylolysis was asymptomatic. After his war injuries he had some pain in his back, but returned to active duty as an instructor in the use of the .50-caliber machine gun. He was honorably discharged in 1969. After his discharge he worked on an assembly line in a lawnmower factory for a period of time. He also studied heating and air-conditioning at a trade school and received a degree in that field. When unable to find employment in that trade, he accepted a position as a hospital custodian at the Veterans Administration Hospital. He also worked for the Quaker Oats Company as a manual laborer, which required lifting and stooping. In May of 1973 he began his employment as a maintenance supervisor with the defendant, Nebraska Methodist Hospital, and worked there until the occurrence of the lifting incident out of which this workmen's compensation claim arises. In his hospital employment he washed walls and windows, shampooed carpets, carried buckets of water, and performed required duties. Prior to the incident of December 31, 1979, he had physical "complications"

arising from his Vietnam wounds, including back pain, and he was examined periodically by doctors of the Veterans Administration to determine his continuing eligibility for disability payments.

The pertinent and only medical testimony in this case, as shown on the direct and cross-examination of the attending physician, is as follows:

"Q Doctor, based upon your experience as a medical physician and based upon your examination of Mr. Leslie Engel, do you have an opinion you can state with reasonable medical certainty as to the cause of Leslie Engel's injuries that you found as a result of your examination?

"A It's my opinion, after examining him, that there were two episodes in his life that caused him to have a painful spondylolysis. The first was the Vietnam injury which then gave him a certain level of back pain that I would describe as minimal to moderate. The injury of December of '79 made the spondylolysis become even more painful, a level that I would describe as moderate to severe.

"Q This is the injury he received on December 31, 1979, while lifting the carpeting, as described to you?

"A That's correct.

"Q Doctor, again based upon your medical expertise and your examination of Leslie Engel, do you have an opinion that you can state with reasonable medical certainty as to the period of time that Mr. Leslie Engel has been totally disabled as a result of the injuries he suffered on December 31, 1979?

"A From December 31, 1979, through the present.

"Q Do you have an opinion you can state with reasonable medical certainty as to whether or not he will require treatment in the future, as a result of the injuries he suffered on December 31, 1979?

"A Yes.

I feel very strongly that he should have a spinal fusion.

"Q What would be, in your opinion, the approximate

cost of this spinal fusion, taking into account the hospitalization, and surgery fees, and so forth? Just a rough estimate.

"A About $10,000.

. . . .

"Q I think when we were visiting last night, you told me that there was nothing peculiar about the work place that caused the experience of more pain December 31, 1979, and that other types of strenuous activity — I think were your words — away from the work place could have also caused this condition. Is that a fair assessment?

"A Yeah.

I think that any strenuous activity could cause a person with spondylolysis to become more symptomatic.

"Q I think the example that I used last night was, for instance, the strenuous activity involved in changing a tire.

"A Yes.

"Q Would you agree with me that that would be the type of thing in everyday life that could set this spondylolysis off?

"A Yes."

The hospital assigns errors in its brief which raise the following propositions: (1) Where the employee aggravates a preexisting disease or condition, the test of legal causation requires the plaintiff to show the exertion at the work place was greater than the usual level of exertion present in the normal nonemployment life of the workman or any other person; and (2) The employee must prove the injury was not the result of the normal progression of his preexisting condition which would have been sustained even in the absence of the accident.

The following principles govern our review in this case. A judgment, order, or award of the Nebraska Workmen's Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers, (2) the judgment, order, or award was procured by fraud,

(3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award, or (4) the findings of fact do not support the order or award. *Chrisman v. Greyhound Bus Lines, Inc.,* 208 Neb. 6, 301 N.W.2d 595 (1981). When determining whether the evidence is sufficient to sustain an award of the three-judge panel of the Nebraska Workmen's Compensation Court after rehearing, such evidence must be considered in the light most favorable to the successful party. The successful party must receive the benefit of every reasonably deducible inference, and every controverted fact must be resolved in his favor. *Chrisman v. Greyhound Bus Lines, Inc., supra.* The findings of fact made by the three-judge panel of the Nebraska Workmen's Compensation Court after rehearing shall have the same force and effect in this court as a jury verdict in a civil case and will not be set aside unless clearly wrong. *White v. Father Flanagan's Boys' Home,* 207 Neb. 528, 300 N.W.2d 15 (1980).

To support its first claim, the hospital relies upon the following cases: *Sellens v. Allen Products Co., Inc.,* 206 Neb. 506, 293 N.W.2d 415 (1980), and *Chrisman v. Greyhound Bus Lines, Inc., supra.*

The hospital argues that in the case of an aggravation of a preexisting condition, liability should not be imposed when the exertion causing the injury is no greater than that occurring in nonemployment activity. The defendant reasons that nonemployment activity could have triggered the disability at any time. As such, it is alleged, the back injury occurring during employment is merely coincidental, and the employer should not be held liable under the circumstances.

The exertion "greater than nonemployment life" test has been applied by this court only in cases involving heart attacks allegedly caused by the activities or stress of employment. *Chrisman v. Greyhound Bus Lines, Inc., supra; Sellens v. Allen Products Co., Inc., supra; Hyatt v. Kay Windsor, Inc.,* 198 Neb. 580, 254 N.W.2d 92

(1977); *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 272 N.W.2d 372 (1978); *Beck v. State*, 184 Neb. 477, 168 N.W.2d 532 (1969); *Brokaw v. Robinson*, 183 Neb. 760, 164 N.W.2d 461 (1969).

The rationale for the rule is discussed at some length in *Sellens, supra* at 509-11. Where a person suffers from a preexisting condition which he claims is aggravated by his employment, he has an increased burden of proving causation. The exertion "greater than nonemployment life" test is simply an application of the increased burden of proof required in preexisting condition cases to the unique problems of proving causation of a myocardial infarction. We find no reason to extend the rule to other cases where the proof of causation is not usually as complex.

In the second proposition, to wit, the employee must prove the injury was not the result of the normal progression of his preexisting condition which would have been sustained even in the absence of the accident, the hospital proposes a rather subtle interpretation of the governing legal principle which distorts the underlying reason for the rule. The employer emphasizes the language "would have been sustained even in the absence of the accident," and argues that a normal progression of the disease would most probably have, at some time, resulted in the disability for which compensation is sought. The language this court has sometimes used in stating the principle, when read in the abstract, might lead one to that conclusion, but it is plain that is not its meaning when we consider the facts of individual cases. The question simply is whether the plaintiff suffered an injury arising out of and in the course of his employment which aggravated the preexisting condition and resulted in the disability. The principle does not require the claimant to prove that the disease or condition will not sometime *in the future* through natural progression result in disability.

The most accurate statement of the principle is found in *Aguallo v. Western Potato, Inc.*, 208 Neb. 66, 302

N.W.2d 41 (1981). "The burden of proof is upon the plaintiff to show by a preponderance of the evidence that the disability sustained was caused by or related to the accident and was not the result of the normal progression of plaintiff's preexisting condition." (Syllabus of the court.) The phrase "even in the absence of the accident," which we find in some cases, for example, *Taylor v. Benton*, 205 Neb. 203, 209, 286 N.W.2d 755, 758 (1980), is not to be taken to refer to possible future progression. It is enough that the accident aggravated, accelerated, or inflamed the preexisting condition.

AFFIRMED.

KRIVOSHA, C.J., and BRODKEY, J., concur in result.