GERALD LEE WILSON, APPELLEE, V. CITY OF NORTH PLATTE,
APPELLANT.
375 N.W.2d 134

Filed October 25, 1985.   No. 84-919.

David W. Pederson and Frank E. Piccolo of Murphy,
Pederson, Piccolo & Pederson, for appellant.

Richard A. Birch of Nielsen & Birch, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE,
SHANAHAN, and GRANT, JJ.

GRANT, J.

This action was brought by appellee, Gerald Lee Wilson, to
recover workmen's compensation benefits from the appellant,
City of North Platte. Wilson alleged he was injured while
working for the city on March 16, 1983, and filed a petition with
the Nebraska Workmen's Compensation Court on July 1, 1983.
An award was entered in his favor on January 25, 1984. Both
Wilson and the city sought rehearing of the order of the single
judge before a three-judge panel of the compensation court.
Evidence adduced before the panel on rehearing showed the
following.

Wilson was hired by the city in 1971. He initially worked at
the city landfill, first as a cashier and later as a heavy equipment
operator. He then worked on the back of a garbage truck for
about a year, lifting garbage cans and dumping the contents into
the truck. In early 1975 Wilson began driving a garbage truck, a

position he held for approximately 6 years. In 1979 Wilson was placed in charge of enforcing municipal safety and sanitation ordinances. He was later promoted to sanitation foreman, a position he held until fired on June 7, 1983.

On March 16, 1983, Wilson reported to work as usual. On that day it was raining, and the rain later turned into a heavy, wet snow. He inspected the sanitation trucks, prepared them for operation, and did some "paperwork." Wilson was then sent to a city park as the operator of a tractor fitted with an auger to dig postholes and place railroad ties in those holes. The auger broke, and on Wilson's return to the shop he was sent out by his supervisor to replace a man who became ill while working on a garbage truck.

At this time there was so much snow on the ground that the workers kept sliding. Around 10 a.m. that morning, Wilson picked up a 30-gallon garbage can which was about half full. As he picked up the can and turned to dump the contents into the truck, he heard a pop and felt a sharp pain in his back. His knees buckled and he dropped the can. A coworker had to come over and pick up the garbage can and dump it for him. Wilson continued to work the rest of the day, but the pain got progressively worse. The following morning Wilson claimed he had so much lower back pain that he was unable to get out of bed.

Wilson testified that as a result of his injury, he suffered from pain in his lower back and numbness in his legs and hands. He testified that the pain prevents him from being able to lift and has caused him difficulty in walking or sitting for any length of time. Wilson eventually returned to work on April 6, 1983. He was subsequently dismissed from his job on April 19, 1983, because of a medically imposed lifting restriction, and then went on leave without pay until June 7, 1983. On that date Wilson was discharged.

After rehearing, the three-judge panel affirmed the findings of the single judge that Wilson had sustained his burden of proving that on March 16, 1983, Wilson was in the employ of the city and while so employed, and on said date and while engaged in the duties of his employment, suffered injuries to his back as a result of an accident arising out of and in the course of

his employment. The three-judge panel also determined that Wilson had suffered a 10-percent permanent partial disability rating to the body as a whole and that he actually suffered a 50-percent loss of earning power, "based on the various factors set forth in Sidel vs. Travelers Insurance Co., 205 Neb. 541, 288 N.W.2d 482 (1980)." The court awarded Wilson benefits of $180 per week for $2^6/_7$ weeks for temporary total disability and $118.40 per week for $297^1/_7$ weeks based on a 50-percent loss of earning power. In addition, the city was directed to pay $350 in medical bills, $1,000 for attorney fees, and $555 in court reporter fees. The city has now appealed to this court, alleging in three assignments of error that the panel erred in failing to find that Wilson did not suffer any accident or injury arising out of and in the course of his employment; in failing to find that the physical disability of 10 percent suffered by Wilson is the result of a preexisting non-work-related trauma; and in failing to find that any disability beyond the 10-percent physical disability is the result of preexisting non-work-related psychological problems.

There is no dispute as to the law applicable in this case, but rather as to the weight to be given the evidence. The compensation court resolved the factual disputes in Wilson's favor. All of the assignments of error concern questions of fact. As such, we must keep in mind that the scope of review for a case such as this is limited. In *Kudera v. Minnesota Mining & Manuf. Co.*, 201 Neb. 235, 238, 266 N.W.2d 915, 917 (1978), we said: "This court is not free in workmen's compensation cases to weigh the facts anew. Our standard of review accords to the findings of the compensation court the same force and effect as a jury verdict in a civil case and will not be set aside unless clearly wrong."

And, further, in *Buck v. Iowa Beef Processors, Inc.*, 198 Neb. 125, 127-28, 251 N.W.2d 875, 877 (1977), we said:

In testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, the evidence must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he should have the benefit of every inference

that can reasonably be drawn therefrom.

With regard to the first assignment of error, the city contends the record does not contain evidence showing a specific incident of injury arising out of or in the course of employment by which Wilson suffered an injury. In support of its argument the city points out that there was conflicting testimony between Wilson and his coworkers as to what actually transpired on the day Wilson was injured.

Wilson testified that one of his coworkers, Timothy Hoban, had to help him pick up the garbage can after Wilson felt his back pop and his knees buckle. Hoban testified that he did not remember working with Wilson on March 16, 1983, that he "very seldom talk[s] to anyone while I am on a truck," and that he has no recollection of such an incident. Hoban also testified that he remembered Wilson was off work in March and April of 1983 but that he did not remember if he worked with Wilson on Wilson's last day. On cross-examination Hoban also admitted that he had worked with Wilson on a number of occasions and that he could not separate what happened on March 16, 1983, from any other day he had worked with Wilson.

There was also testimony by Fred German, Wilson's other coworker, who was driving the garbage truck on March 16, 1983. In May of 1983, approximately 2 months after Wilson's injury, German gave a statement that Wilson never said anything about hurting his back on March 16, 1983. At his deposition taken for the trial, German testified that Wilson told him on March 16 that he had hurt his back and complained that his back "was hurting him terrible."

Conflicting testimony such as this raises questions of credibility and recollection. "In a law action it is not within the province of the Supreme Court to weigh or resolve conflicts in the evidence. The credibility of witnesses and the weight to be given their testimony are for the trier of fact." *Novotny v. Electric Hose & Rubber Co.*, 214 Neb. 216, 219, 333 N.W.2d 406, 409 (1983). We have reviewed the record, and we conclude that the Workmen's Compensation Court, sitting as the trier of fact, was not clearly wrong in believing Wilson's account as to what happened on March 16, 1983.

The city also argues that the doctors who treated Wilson for

his lower back pain were never informed by Wilson as to a specific injury causing such pain. The evidence, however, shows otherwise.

Dr. Richard Slovek, an orthopedic surgeon, testified that Wilson did not tell him of any specific injury or incident which triggered his back pain. Dr. Slovek testified Wilson only told him that his back was sore after work one day. Dr. Slovek also testified, however, that when Wilson came to see him for the first time, as part of standard medical procedure, a history was taken from Wilson. This history included a description of the lifting incident on March 16, 1983, and of the symptoms that followed.

Dr. Cleve Hartman, a general practitioner, testified he could not remember what Wilson had told him on March 17, 1983, when Wilson saw him for the first time. But Dr. Hartman testified he was aware that the back injury was work-related, both when he initially treated Wilson and on four other visits in March and April of 1983.

Having reviewed the entire testimony of Drs. Slovek and Hartman, we hold that there was sufficient evidence before the workmen's compensation panel for the panel to hold that both doctors were aware of the lifting incident on March 16, 1983. Both gave expert medical opinions as to the aggravation suffered to Wilson's back, couched in terms surrounding the March 16, 1983, lifting incident. The city's position that the doctors had no notice of this incident or that such an incident never took place is unfounded. There is sufficient evidence in the record to support the findings of the panel that on March 16, 1983, while in the performance of his duties for the city, Wilson picked up a garbage can and as a result suffered injury to his back.

In its second error the city contends that the physical disability of 10 percent suffered by Wilson is the result of preexisting non-work-related trauma. As such, the city argues that even if Wilson's injury is job related, there is no legal causal relationship between his injury and his employment and that the debilitating symptoms that Wilson suffers from are the result of a preexisting back disease which eventually would have caused Wilson's disability.

It is undisputed that prior to March 16, 1983, Wilson had a back condition known as degenerative disk disease. The city suggests that the trauma that initially caused this condition may have been an antitank mine exploding near Wilson while he was on active Army duty in Vietnam in 1967. Through the $11\frac{1}{2}$ years that Wilson had worked for the city, however, he had not experienced any pain in his lower back while lifting, bending, or walking. There is nothing in the record to indicate it hindered his job performance in employment with the city. There was ample evidence before the panel to support its finding that Wilson on March 16, 1983, "while engaged in the duties of his employment . . . suffered injuries to his back as a result of an accident arising out of and in the course of his employment" with the city.

To say that the mine explosion in Vietnam was the only incident of trauma to Wilson's back prior to March 16, 1983, is simply unfounded. The types of jobs Wilson had with the city contributed to the wear and tear on his back. For nearly a year and a half, Wilson worked on the back of a garbage truck, picking up trash cans that would generally weigh between 50 and 150 pounds. He also had to scoop up and throw in the garbage truck bundles of trees, grass, and weeds. While driving the truck for nearly 5 years, he also was required to help throw garbage in the truck when his coworkers needed help, and up until 1976 had to help in lifting "ice boxes or hot water heaters" onto the truck. Even after Wilson was promoted to municipal code enforcement, he still worked on the back of a garbage truck on at least 14 occasions from 1982 through the date of his injury on March 16, 1983. The record also shows that early on the morning of March 16, 1983, prior to hurting his back, Wilson had been working in a city park placing 60- to 70-pound railroad ties. The many years of lifting while employed for the city certainly contributed to the weakening of Wilson's back.

There is no question that the presence of a preexisting disease or condition enhances the degree of proof required to establish that the injury arose out of and in the course of employment. *Novotny v. Electric Hose & Rubber Co.*, 214 Neb. 216, 333 N.W.2d 406 (1983). This court, however, has never said what quantum of evidence is needed in addition to the usual

"preponderance of the evidence" standard which is used for claims brought under the Nebraska Workmen's Compensation Act. But in *Engel v. Nebraska Methodist Hospital*, 209 Neb. 878, 312 N.W.2d 281 (1981), this court stated in its syllabus:

When a workmen's compensation claimant is alleged to have suffered a disability rising out of and in the course of his employment which consists of the aggravation of a preexisting condition, the burden of proof is upon the plaintiff to show by a preponderance of the evidence that the disability sustained was caused by or related to the accident and was not the result of the normal progression of plaintiff's preexisting condition.

The facts in *Engel* are strikingly similar to the ones in this case. Both Engel and Wilson were wounded by a bomb exploding near them while serving in Vietnam. Both suffered trauma to their backs as a result of the explosion. Both further aggravated the preexisting defect to their backs as a result of lifting incidents while in their employment. In holding for the plaintiff, Engel, the court said:

The question simply is whether the plaintiff suffered an injury arising out of and in the course of his employment which aggravated the preexisting condition and resulted in the disability. The principle does not require the claimant to prove that the disease or condition will not sometime *in the future* through natural progression result in disability.

*Id.* at 883, 312 N.W.2d at 285. Wilson has carried his burden of proving that he has a compensable injury under the Nebraska Workmen's Compensation Act.

In its last assignment of error, the city alleges that any disability beyond 10 percent physical disability "is the result of preexisting non-work related psychological problems." We do not so read the panel's finding and order.

Dr. Slovek testified that the injury to Wilson resulted in a 10-percent permanent partial disability. The three-judge panel found that while Wilson had been given a 10-percent permanent partial disability rating, he had actually suffered a 50-percent loss of earning power. The city alleges that any disability beyond the 10-percent physical disability is the result of preexisting non-work-related psychological problems.

Wilson was diagnosed in 1982 as having a psychological disorder known as posttraumatic stress syndrome. This problem was linked to his experiences while in Vietnam. It is the city's contention that a significant portion of Wilson's disability, specifically his inability to obtain other work, is attributable to his psychological problems. The city argues that it should not compensate Wilson for a problem that he suffered while outside his employment with the city.

In its award the three-judge panel stated "that the plaintiff has actually suffered a substantial loss of earning power, based on the various factors set forth in Sidel vs. Travelers Insurance Co., 205 Neb. 541, 288 N.W.2d 482 (1980)." In determining the loss of earning power to the employee in *Sidel v. Travelers Ins. Co.*, 205 Neb. 541, 547, 288 N.W.2d 482, 485-86 (1980), this court stated:

> [T]he Workmen's Compensation Court was entitled to take into consideration not only the 10 percent loss of bodily function because of the lumbar laminectomy, but also the facts that the plaintiff was engaged in common labor and that that was his primary skill. His ability to lift was impaired and his employability was thus reduced.

In this case the Workmen's Compensation Court entered its award in favor of Wilson based on physical disability and other relevant factors, but not his psychological problems. Similar to the employee in *Sidel*, Wilson's educational background is very limited, as shown by the record. He has no formal education beyond high school, where he was in special education training. He has a little difficulty in reading and writing.

Additionally, Wilson's employment history consisted mostly of manual labor. As a result of the lifting incident on March 16, 1983, Wilson injured his back, impaired his ability to lift, and thus reduced his employability. Given the facts in this case, we cannot say, as a matter of law, that the compensation court was clearly wrong in finding Wilson suffered a 50-percent loss in earning power. The city's contention that the amount of the award is significantly based on Wilson's psychological problems is mere speculation. A finding of 50 percent loss in earning power was well within the discretion of the compensation court.

In view of the limitations imposed upon this court regarding the review of the decisions made by a three-judge panel of the Nebraska Workmen's Compensation Court, we believe the evidence was sufficient to support the award entered by the court on November 6, 1984. The judgment of the compensation court is affirmed, and Wilson is allowed the sum of $1,000 for the services of his attorney in this court.

AFFIRMED.