LINDA K. SMITH, APPELLEE, V. HASTINGS IRRIGATION PIPE CO., A NEBRASKA CORPORATION, APPELLANT.
386 N.W.2d 9

Filed May 2, 1986.   No. 85-443.

Walter E. Zink II of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Douglas Pauley of Conway, Connolly and Pauley, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This action was brought by appellee, Linda K. Smith, to recover workmen's compensation benefits from the appellant, Hastings Irrigation Pipe Co. (Hastings Pipe). Smith was injured while working for Hastings Pipe on October 10, 1983, and filed a petition with the Nebraska Workmen's Compensation Court on July 12, 1984. After rehearing, a three-judge panel of the Workmen's Compensation Court, with one judge dissenting, modified a single-judge order and found that Smith was entitled to the costs of certain medical treatment by Dr. John L. Greene, together with temporary total disability payments during that treatment, and that Smith was entitled to rehabilitation services. Hastings Pipe appeals from that order, assigning as error the findings set out above.

Evidence adduced before the panel on rehearing showed the following. On October 10, 1983, Smith was in the employ of Hastings Pipe as a punch press operator in Hastings, Nebraska. She was working in the antenna production department, making ends for antenna dishes. Smith's job required her to

take a piece of metal in her left hand and put it in a press machine with the right hand while holding the metal with a pair of pliers. She then pushed down on a foot pedal, thus activating the press and stamping the piece of metal.

Smith testified that on the day of her injury the press she was operating was malfunctioning. The machine would activate without Smith's pushing the pedal. Smith testified that she told her supervisor about this, but he said he "would take care of it at the end of the night." The press continued to operate improperly, and Smith again reported this. Again, nothing was done. Smith further testified, "the next thing I knew, it came down and took my fingers."

The injury sustained by Smith was a partial amputation of the distal phalanges of the third and fourth fingers on her left hand. Smith was admitted to the Mary Lanning Memorial Hospital in Hastings, Nebraska, and was initially treated by Dr. Elmer E. Glenn. Dr. Glenn cleaned and reconstructed Smith's fingers and gave her medication for pain. While hospitalized at Mary Lanning, Smith complained of severe pain in her left hand and arm, radiating up to her left shoulder. Smith was released from the hospital on October 16, 1983, and continued in Dr. Glenn's care for the remainder of 1983 and through most of 1984.

Smith returned to work on January 9, 1984. Smith testified that when she returned to work she was experiencing hot, burning sensations in her hand that felt like hot needles going up into her arm. As a result of this pain, Smith had difficulty performing the assigned duties of her job. Smith testified that she had to receive help from a fellow employee to perform many aspects of a job that required two good hands. She further testified that it was not normal for two people to work together and that one person is supposed to be able to handle the whole job alone. Also, she indicated that her productivity at this time when she attempted to work was very low compared to other employees who had the use of both of their hands and arms.

Smith was terminated by Hastings Pipe by way of a letter dated February 24, 1984, which stated she had to be replaced because of "business necessity." Smith's last day at work was

February 7, 1984. She left early that day because of a kidney stone problem.

Smith continued to see Dr. Glenn during February 1984. Dr. Glenn recommended revision of her fingers. This procedure requires the shortening of the bones in the injured fingers. The revision was not done at that time, but, rather, Dr. Glenn referred Smith to Dr. Terry Newman. Dr. Newman administered 14 stellate ganglion block injections to Smith in May and June 1984 in an attempt to control and alleviate the pain Smith was experiencing. The stellate ganglion block was used to block the sympathetic nervous system supply to Smith's left upper extremity. By administering these blocks, the sensation of pain subsided and provided relief to Smith for anywhere from 6 to 8 hours.

Smith continued to suffer, almost continuously, from a burning, aching, tingling-like feeling beginning in her left hand and arm and radiating up through her left arm into the shoulder region. She was referred to Dr. Robert Hacker, a neurosurgeon, in Omaha, Nebraska. Dr. Hacker administered two stellate ganglion blocks to Smith in June 1984. These injections again only provided temporary relief. In addition, Smith suffered a small pneumothorax (punctured lung) with the second stellate ganglion injection. Dr. Hacker then conferred with Dr. John Edney, a plastic surgeon. Smith was hospitalized at Nebraska Methodist Hospital in Omaha, and Dr. Edney felt that the pain Smith was experiencing could be reduced with a revision of the fingertip stumps. At the time of Smith's hospitalization on this occasion, Dr. Edney stated that "the bony ends of both fingers were found to be pushing into the overlying skin." Dr. Edney performed surgery for revision of the finger stumps on June 26, 1984. During this surgical procedure, Dr. Edney inadvertently cut the tip of the little finger of Smith's left hand, which up until that time was injury-free.

As a result of her feelings concerning the punctured lung and cut finger, Smith testified, she did not return to Dr. Hacker or Dr. Edney. Smith testified that she still had very limited use of her left hand and arm after the surgery, because of continual pain.

Smith returned to the care of Dr. Glenn and Dr. Newman. Dr.

Newman referred her to Dr. John Greene, a neurosurgeon. Dr. Greene first saw Smith on September 17, 1984, and took a medical history from her on that date. Dr. Greene testified that based upon his physical findings, a discussion with Dr. Newman, and Smith's past medical history, he determined that Smith should undergo a surgical procedure known as a sympathectomy. This procedure entails the removal of a cluster of nerve fibers, known as ganglia. By removing the ganglia the sequence of propagation of a nerve impulse is interrupted. The theory of this procedure is to stop the pain Smith feels in her left upper extremity. The sympathectomy is designed to accomplish the same thing as the stellate ganglion block injections, but to give permanent relief. Smith was admitted to Bishop Clarkson Memorial Hospital in Omaha, and surgery was performed on September 19, 1984. While Dr. Greene testified that the surgery had objective findings of being a success, Smith testified that she still had pain in her left upper extremity. She testified that the only change in her condition since Dr. Greene's surgery is that her hand is now dry, rather than sweaty, and that the left upper part of her body does not sweat at all. She testified she still had the same limitations of the use of her hand and arm as she had before the surgery, which basically amounts to a left arm that is useless because of the pain.

Lastly, at the request of Hastings Pipe, Smith was examined by Dr. Chingren, an orthopedic surgeon, on January 21, 1985. Dr. Chingren is a Hastings, Nebraska, physician who, after his examination of Smith, prescribed some pain medication as well as the percussing of her finger stumps in an attempt to alleviate the pain Smith was still experiencing. It is Dr. Chingren's opinion that part of Smith's pain is real and part nonreal. In that connection Dr. Greene testified that his operation should or usually does relieve causalgia pain, but "It would be fair to say that if she [Smith] continues to have causalgia-like pain, even on a psychological basis whether she is consciously aware of it, it's still pain."

In reviewing workmen's compensation cases this court does not reweigh the facts. Our standard of review accords to the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing the same force and effect

as a jury verdict in a civil case. Such findings will not be reversed or set aside unless clearly wrong. *Wilson v. City of North Platte*, 221 Neb. 90, 375 N.W.2d 134 (1985). We have also said that in testing the sufficiency of the evidence to support the findings of fact made by the Nebraska Workmen's Compensation Court after rehearing, every controverted fact must be resolved in favor of the successful party, and the successful party is given the benefit of every inference that can reasonably be drawn from the evidence. *Wilson v. City of North Platte, supra*; *Buck v. Iowa Beef Processors, Inc.*, 198 Neb. 125, 251 N.W.2d 875 (1977).

Hastings Pipe first contends that the Workmen's Compensation Court erred in finding that "the plaintiff's [Smith's] treatment by Dr. John L. Greene and the temporary total disability during that treatment was compensable" and "the medical expenses of Dr. Greene . . . including certain hospital services ordered by him were compensable." In support of its position, Hastings Pipe points out that the present case involves a subjective problem (pain), rather than an objective problem. While it is true that Smith's pain was subjective, Smith had suffered partial amputation of two fingers. The purpose of Dr. Greene's surgery was to alleviate the pain she was experiencing as a result of that injury. Dr. Greene's surgery was merely another effort to treat the same problem that Smith had been treated for by Drs. Newman, Hacker, and Edney—all of which medical bills Hastings Pipe paid.

Hastings Pipe relies on *Mack v. Dale Electronics, Inc.*, 209 Neb. 367, 307 N.W.2d 814 (1981), and *Powell v. W. G. Pauley Lumber Co.*, 217 Neb. 707, 350 N.W.2d 556 (1984). Both cases stand for the proposition that where an injury is not of an objective nature, a causal connection between the accident and the disability must be established by expert medical testimony. Hastings Pipe argues that the best that can be concluded from the testimony of Drs. Greene and Chingren is that there *could* have been a causal connection between the accident and Smith's pain at the time of Dr. Greene's surgery. In connection with this, Hastings Pipe states in its brief at 11-12 that "plaintiff clearly has not met her burden of establishing a causal connection between her alleged injury, the employment, and the disability

by competent medical testimony as required by the standards set forth in *Mack* [and] *Powell* . . . ." For this reason Hastings Pipe maintains that Smith is only entitled to be compensated for a schedule injury to each of her fingers and not for disability or medical expenses associated with Dr. Greene's surgery.

We do not agree. The issues raised by Hastings Pipe simply pertain to the sufficiency of the evidence in this case. Smith has presented evidence showing a continuous condition existing since her injury of October 10, 1983. Such evidence, when coupled with the history of Smith's treatment and the doctors' opinions, constitutes sufficient evidence to support the award made by the three-judge panel.

The record before us shows that from the very first day of her injury Smith complained of pain in her left hand, left arm, and left upper extremity, radiating up into the shoulder area. Smith received almost continual treatment for her injury and the pain she was experiencing. Both Dr. Hacker's medical report and Dr. Greene's deposition support the finding that Smith's pain was caused by her work-related accident. The majority opinion of the three-judge panel acknowledges that Dr. Greene's testimony, standing alone, is not sufficient to sustain Smith's burden of proof on the issue of medical causation. The order goes on to say that

> considering all the evidence and the opinions of the other physicians, including the final diagnosis of Dr. Hacker . . . the Court finds that the evidence is sufficient to sustain the plaintiff's burden of proving that her course of treatment starting in May, 1984 and continuing until November, 1984, was causally related to said accident and injury of October 10, 1983. This treatment [Dr. Greene's] was necessitated by the symptoms of the plaintiff that existed from the time of said accident and injury.

As we view the record, the Workmen's Compensation Court was not clearly wrong in finding Dr. Greene's services and related medical expenses were compensable. Smith is also entitled to disability.

In its other assignment of error, Hastings Pipe contends the Workmen's Compensation Court erred "In finding that the plaintiff [Smith] was entitled to vocational rehabilitation

services." The record shows that Smith has a 12th-grade education and is currently attending Hastings Central Community College and taking classes which will enable her to do managerial-type duties in the retail horticultural field.

In *Evans v. American Community Stores, ante* p. 538, 540, 385 N.W.2d 91, 93 (1986), we held:

> The right of an injured workman to vocational rehabilitation depends upon his inability to perform work for which he has previous training and experience. § 48-162.01; *Behrens v. Ken Corp.,* 191 Neb. 625, 216 N.W.2d 733 (1974). This is ordinarily a question of fact to be determined by the compensation court. *Pollock v. Monfort of Colorado, supra* [221 Neb. 859, 381 N.W.2d 154 (1986)].

Smith testified her arm still is essentially useless. Prior to her employment at Hastings Pipe, Smith held jobs which required two good hands and arms. Most, if not all, of these jobs were minimum-wage-type jobs. Smith's vocational training will allow her to obtain a job which will not require constant use of two good hands and arms. The Workmen's Compensation Court found vocational rehabilitation training was authorized under Neb. Rev. Stat. § 48-162.01(6) (Reissue 1984).

The dissenting judge of the three-judge panel felt that the "loss of her long and ring fingers . . . is [not] sufficient to entitle her to vocational rehabilitation . . . particularly . . . in view of the plaintiff's work history which shows that she has experience and training in several jobs that she can do." It is true that in her 10 years in the work force, Smith had jobs as a worker in the kitchen and dining room of a retirement home, as a filing clerk with an insurance company, as a waitress in bars and a restaurant, and as a sales clerk in various retail establishments. Smith testified, however, that each of these jobs required the use of both hands and both arms and that, although she had done such jobs in the past, she was unable to do them after her injury. Smith's testimony as to the physical requirements of each of her jobs, and her inability to perform the jobs after her injury, constituted sufficient evidence to support the findings of the majority of the panel, which found that Smith had suffered a reduction in her earning power as a result of her

accident and injury and determined that Smith was entitled to rehabilitation in an effort to increase her earning capacity. The evidence before the panel was sufficient to support those findings.

We determine that the evidence before the three-judge panel was sufficient to support the award entered by the court. The judgment of the compensation court is affirmed, and Smith is allowed the sum of $1,000 for the services of her attorney in this court.

AFFIRMED.