DAVID SPANGLER, SR., APPELLANT, V. STATE OF NEBRASKA,
NEBRASKA STATE PATROL, APPELLEE.

448 N.W.2d 145

Filed November 17, 1989.    No. 89-337.

J. Murry Shaeffer, P.C., for appellant.

Robert M. Spire, Attorney General, and William J. Orester for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

The employee plaintiff-appellant, David Spangler, Sr., challenges the denial of workers' compensation benefits from his former employer, defendant-appellee State of Nebraska. His assignments of error merge to claim that the Nebraska Workers' Compensation Court erred in concluding that (1) he failed to sustain his burden of proving that his employment exertion or stress contributed in some material and substantial degree to cause the disability he suffers as the consequence of heart disease, and (2) Neb. Rev. Stat. § 18-1723 (Reissue 1987), which raises a rebuttable presumption that there is an "in the line of duty" cause of heart disease in certain police officers, does not apply to workers' compensation cases. We affirm.

Spangler filed a petition alleging that between approximately January 3 and 19, 1986, he sustained personal injury in an accident arising out of and in the course of his employment when he, while working for the Nebraska State Patrol as a sergeant, developed heart disease resulting from the "exertion"

of his employment. In denying liability the State answered that Spangler's condition "was the result of the natural progression of a preexisting condition unrelated to employment."

Spangler began work for the patrol in 1971 as a traffic officer. In 1979, he was promoted and assigned to supervise several other officers who, having been passed over for promotion in the past, resented him. According to Spangler, their resentment made his supervisory duties "extremely" difficult. In 1981, Spangler was again promoted, conditioned on his transfer to another city. Spangler viewed the anticipated move as stressful because he was unable to sell his house.

In any event, Spangler was not transferred because he suffered an inferior myocardial infarction. As he describes it, "in February of 1981 . . . I was suffering chest pains and went to the emergency room at the hospital . . . and was admitted for . . . a minor heart attack," and then the following Wednesday, "I suffered a major heart attack." Spangler, then 32 years of age, was diagnosed as suffering from ischemic heart disease.

After recovering, Spangler was assigned in a supervisory capacity to the Governor's mansion security detail. Eventually, he became the then Governor's travel coordinator. As a consequence, Spangler's duties and working hours increased, and according to Spangler, the work involved "a lot more stress."

Spangler suffered another acute inferior myocardial infarction in May 1984 and in June experienced angina and underwent coronary artery bypass graft surgery. There was some evidence that the 1984 angina was precipitated by the receipt of an undescribed bill which upset him.

Pursuant to authorization by his treating physician, Spangler returned to work at the Governor's mansion in July 1984 with no duty limitations. He was still working between 46 and 50 hours per week and frequently suffered chest pain while driving at high speeds through heavy traffic when the Governor was behind schedule.

Spangler was again hospitalized in January 1986 with severe chest pain and was diagnosed as having progressive unstable angina pectoris, which is a symptom of underlying coronary artery disease. After the 1986 hospitalization, Spangler's family

physician and his cardiologist determined that Spangler should not return to work because he was endangering himself, the Governor, and fellow officers. Spangler was deemed medically disabled and placed on medical retirement from the patrol on July 21, 1986.

According to Spangler, the angina he experienced was provoked by driving at high speeds to deliver the Governor to the airport the day before he was hospitalized. Spangler testified that he did not experience chest pains at home except during physical exertion on hot, humid days and when receiving telephone calls related to work.

Dr. Sabyasachi Mahapatra testified that the stresses Spangler confronted at work contributed to or aggravated his angina pectoris. In Mahapatra's opinion, Spangler's symptoms were related to driving at high speeds, and, thus, Spangler should discontinue his work for the patrol to prevent aggravation or precipitation of the symptoms of his heart disease. Mahapatra further testified that in January 1988 there was no indication that Spangler's heart disease had worsened since his retiring from the patrol and otherwise limiting his physical activity.

Dr. Joseph Jarzobski testified that Spangler should not continue his work for the patrol, that his physical activity is significantly restricted, and that his heart disease is a permanent condition. However, Jarzobski also testified that Spangler suffered some degree of physical impairment from the coronary heart disease before he was hospitalized in 1986 for angina pectoris. Jarzobski could not be sure whether the angina pectoris Spangler suffered in 1986 increased his level of permanent physical impairment beyond what it had been before the 1986 hospitalization, stating:

> It's hard to be sure if that time frame where the symptoms occurred that you referred to really made things tremendously worse. It's part of the whole disease process. And it's a progressive process. At this moment I don't recall that he actually had a heart attack during that time frame. So the angina is short of a heart attack, and theoretically, is controllable with medicine and limiting activity. But whether that time frame made things worse or not, it's hard to be positive.

However, although Jarzobski could not "say with certainty" that Spangler's employment caused his heart disease, he did "feel that it definitely contributed to and aggravated the heart disease."

Spangler's family has a history of heart disease. His mother died of a heart attack, and two brothers suffer from heart disease. At the time of his hospitalization in 1986, Spangler smoked excessively, suffered from hypertension, was overweight, had an elevated cholesterol level, and was of a deadline-setting, pushing, and driving personality. Both Mahapatra and Jarzobski testified that these conditions are significant risk factors associated with the development and aggravation of coronary artery disease. Although Jarzobski believed that Spangler's work stress combined with these risk factors to aggravate Spangler's heart disease in 1986, Jarzobski was unable to allocate the amount of aggravation to Spangler's heart condition which was attributable to Spangler's work stress and to each of the risk factors. Jarzobski also testified that the angina Spangler suffered in 1986 was the result of the natural progression of his coronary artery disease and that Spangler occasionally experienced angina when at rest.

Spangler elicited testimony from an assistant professor of criminal justice, who testified that based on the "consistent findings" of increased heart and cancer problems, mortality and suicide rates, and marital difficulties, "it's fairly clear that police officers experience higher levels of stress than either members of the general population or than persons associated with other occupations." According to this witness, the findings of increased stress were uniform among all law enforcement officers, regardless of the size, location, or function of the department in which the officers were employed.

We begin our analysis of Spangler's first summarized assignment of error, which questions the compensation court's conclusion that he failed to sustain his burden of proof, by noting that the findings of fact made by the Workers' Compensation Court have the same force and effect as a verdict in a civil case and will not be set aside unless clearly wrong. *Schlotfeld v. Mel's Heating & Air Conditioning, ante* p. 488, 445 N.W.2d 918 (1989); *Alley v. Titterington, ante* p. 71, 443

N.W.2d 615 (1989). In testing the sufficiency of the evidence to support the findings of fact made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party. *Id.*

It is undisputed that at the time of his hospitalization in 1986, Spangler had a preexisting heart condition. Thus, in order to resolve Spangler's contentions, it is necessary to understand the legal principles involved where the claimant has such a preexisting condition.

We have said that a workers' compensation claimant may recover where an injury, arising out of and in the course of employment, combines with a preexisting condition to produce disability, notwithstanding that absent the preexisting condition no disability would have resulted. *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984). To sustain an award in a workers' compensation case involving a preexisting disease or condition, it is sufficient to show that the injury resulting from an accident arising out of and in the course of employment and the preexisting disease or condition combined to produce disability, *Kingslan v. Jensen Tire Co.*, 227 Neb. 294, 417 N.W.2d 164 (1987), or that the employment injury aggravated, accelerated, or inflamed the preexisting condition, *Engel v. Nebraska Methodist Hospital*, 209 Neb. 878, 312 N.W.2d 281 (1981), and *Keith v. School Dist. No. 1*, 205 Neb. 631, 289 N.W.2d 196 (1980). However, an injury, disability, or death that is the result of the normal progression of any preexisting condition or that is due to natural causes, although occurring while the employee is at work, is not compensable under the Workers' Compensation Act. *Gilbert v. Sioux City Foundry*, 228 Neb. 379, 422 N.W.2d 367 (1988); *Sellens v. Allen Products Co., Inc.*, 206 Neb. 506, 293 N.W.2d 415 (1980); *Newbanks v. Foursome Package & Bar, Inc.*, 201 Neb. 818, 272 N.W.2d 372 (1978); Neb. Rev. Stat. § 48-151(4) (Reissue 1988).

The burden of proof is upon the claimant to show by a preponderance of the evidence that the disability sustained was caused by an accident arising out of and in the course of employment. *Elliott v. Midlands Animal Products*, 229 Neb. 823, 428 N.W.2d 920 (1988); § 48-151(2). The presence of a preexisting condition enhances the degree of proof required to

establish that the injury arose out of and in the course of employment, *Fees v. Rivett Lumber Co.*, 228 Neb. 617, 423 N.W.2d 483 (1988), and *Gilbert v. Sioux City Foundry, supra*, in the sense that the claimant must show that the disability sustained was not the result of the normal progression of the claimant's preexisting condition, *Elliott v. Midlands Animal Products, supra, Wilson v. City of North Platte*, 221 Neb. 90, 375 N.W.2d 134 (1985), *Benson v. Barnes & Barnes Trucking, supra*, and *Engel v. Nebraska Methodist Hospital, supra* (claimant not required to prove that natural progression of disease or condition will not result in disability sometime in the future).

We have long discarded the view that an accidental injury must be caused by a single traumatic event to be compensable under the Workers' Compensation Act. *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d 157 (1980); *Brokaw v. Robinson*, 183 Neb. 760, 164 N.W.2d 461 (1969). However, if it is asserted that the injury developed over a period of time because of employment exertion, the claimant, in order to establish that the injury arose out of the employment, must show that the employment exertion contributed to the cause of the injury in some material and substantial degree. *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987). This rule has particular application in cases involving heart conditions. We have held that in such cases the claimant has the burden of establishing by a preponderance of the evidence that exertion or stress in his employment contributed in some material and substantial degree to cause the heart injury. *Mann v. City of Omaha*, 211 Neb. 583, 319 N.W.2d 454 (1982); *Sellens v. Allen Products Co., Inc., supra*; *Newbanks v. Foursome Package & Bar, Inc., supra*.

Accordingly, an exertion- or stress-caused heart injury to which the claimant's preexisting heart disease or condition contributes is compensable only if the claimant shows that the exertion or stress experienced during employment is greater than that experienced during the ordinary nonemployment life of the employee or any other person. *Mann v. City of Omaha, supra*; *Sellens v. Allen Products Co., Inc., supra*; *Newbanks v. Foursome Package & Bar, Inc., supra*. This requirement flows

from the application of the increased burden imposed in preexisting condition cases to the unique problem of proving the cause of a myocardial infarction. See, *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984); *Engel v. Nebraska Methodist Hospital, supra.*

Although many of the circumstances in *Mann* are similar to those now before us, *Mann* is different in a crucial respect. In *Mann*, the employee police officer sued to recover benefits from his employer as the result of a second heart attack he suffered on October 2, 1980. He had been working as a police officer for 19 years and had suffered a previous heart attack in 1978. After the first heart attack, he returned to work as completely recovered, with no disabilities or limitations on his duties. For 1¹/₂ years before his second attack, the officer had been assigned to a district which abutted a high-risk district where he was frequently summoned. A witness testified that police officers, especially those serving in densely populated urban areas, suffer significantly more stress than the population generally.

Like Spangler, Mann had several personal risk factors associated with a higher-than-average incidence of coronary artery disease. He had a family history of early myocardial infarctions, was a heavy smoker, and was mildly overweight. Nevertheless, expert testimony established that Mann's second heart attack was the result of employment stress. At the time of the first heart attack, Mann's right coronary artery was free of obstruction, but by the time of the second heart attack, that artery was completely obstructed. According to Mann's treating physician, the relatively rapid obstruction was unusual. The physician was of the opinion that Mann's personal risk factors could not have accelerated the obstruction to that extent, saying: " 'I find it inconceivable that [Mann's personal risk factors] were significant contributors to the heart attack in 1980. . . .' " *Mann* at 589, 319 N.W.2d at 457. Instead, Mann's physician was of the opinion that the rapid obstruction was the result of abrupt rises in blood pressure related to Mann's police work.

In reversing the compensation court's conclusion that there was insufficient evidence for the court to single out stress as the

primary or leading causal agent in Mann's disease, we said:

> In this case there was a sufficient showing that the appellant experienced greater stress in his employment life than in his nonemployment life. It has often been stated by this court that the opinions of experts are not binding on the trier of fact. . . . However, where the medical testimony is uncontroverted, unimpeached, and is given in matters of medical diagnosis which are peculiarly within the range of the knowledge of the expert, the compensation court is not free to substitute its own diagnosis. It is not true that in every case the uncontested opinion of an expert is binding on the trier of fact, but where, as here, the testimony is based on firsthand knowledge, is credible, and has no demonstrable weaknesses or failure of foundation, such testimony cannot be ignored.

*Mann* at 592-93, 319 N.W.2d at 459.

Nonetheless, it must be remembered that in workers' compensation cases, issues with regard to the cause of injury and disability are matters of fact to be determined by the Workers' Compensation Court, which sits as the finder of fact. *Tatara v. Northern States Beef Co.*, 230 Neb. 230, 430 N.W.2d 547 (1988). As the finder of fact the compensation court is not required to take the opinion of an expert in regard to the causal connection between the alleged accident or exertion and the resulting disability as binding upon it. See *Randall v. Safeway Stores*, 215 Neb. 877, 341 N.W.2d 345 (1983). See, also, *Tatara v. Northern States Beef Co., supra.*

Although both Mahapatra and Jarzobski testified that the stresses of Spangler's employment contributed to and aggravated the angina for which Spangler was hospitalized in 1986, Jarzobski was unable to testify as to whether the angina pectoris Spangler suffered in 1986 increased his level of permanent physical impairment beyond what it had been before the 1986 hospitalization. In addition, it is clear that Spangler has many of the personal risk factors associated with coronary artery disease. Unlike the situation in *Mann*, where the physician found it "inconceivable" that the personal risk factors were significant contributors to Mann's heart attack and instead opined unequivocally that the heart attack was

caused by work-related rises in blood pressure, Jarzobski was unable to determine the amount of aggravation to Spangler's heart condition which was attributable to his work stress and that which was attributable to the personal risk factors.

Thus, there was sufficient evidence for the compensation court to determine that Spangler's work-related stress did not contribute in a material and substantial degree to cause his heart disease and that instead Spangler's 1986 angina was merely the regrettable result of the normal progression of his condition.

Spangler further asserts, in his second summarized assignment of error, that contrary to the compensation court's conclusion, § 18-1723 applies to workers' compensation cases. Spangler introduced into evidence a copy of § 18-1723 as it existed before the 1985 legislative session. However, in 1985, before Spangler suffered the injury for which he seeks compensation benefits, the Legislature made modifications to § 18-1723, which now provides in relevant part:

> Whenever . . . any police officer of any city or village . . . . shall suffer death or disability as a result of hypertension or heart or respiratory defect or disease, there shall be a rebuttable presumption that such death or disability resulted from accident or other cause while in the line of duty for all purposes of Chapter 15, article 10, sections 16-1001 to 16-1042, and any . . . police officer's pension plan established pursuant to any home rule charter, the Legislature specifically finding the subject of this section to be a matter of general statewide concern.

Chapter 15, article 10, and Neb. Rev. Stat. §§ 16-1001 to 16-1042 (Reissue 1987) concern retirement systems for certain police officers and firefighters. Thus, even if the statute applies to members of the patrol, a matter we do not decide, the clear import of the language of § 18-1723 is that the rebuttable presumption it creates applies only for purposes of the designated pension plans and retirement systems. It is not within the province of the Supreme Court, the Workers' Compensation Court, or any other tribunal to read a meaning into a statute which is not warranted by its language. See *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb.

288, 436 N.W.2d 151 (1989).

For the foregoing reasons, the compensation court's order of dismissal is affirmed.

AFFIRMED.