EDWARD CUMMINGS, APPELLANT, V. OMAHA PUBLIC SCHOOLS
AND ITT HARTFORD INSURANCE CO., ITS WORKERS'
COMPENSATION INSURANCE CARRIER, APPELLEES.
574 N.W. 2d 533

Filed February 10, 1998.    No. A-97-782.

James E. Harris and Britany S. Shotkoski, of Harris, Feldman
Law Offices, for appellant.

Joseph W. Grant and Lisa M. Meyer, of Gaines, Mullen,
Pansing & Hogan, for appellees.

MILLER-LERMAN, Chief Judge, and IRWIN and SIEVERS, Judges.

IRWIN, Judge.
## I. INTRODUCTION
Edward Cummings appeals from an order of the Workers'
Compensation Court review panel (panel) which affirmed an

order of a trial judge of the Workers' Compensation Court (compensation court) on remand from this court's opinion in *Cummings v. Omaha Public Schools*, 5 Neb. App. 391, 558 N.W.2d 601 (1997). The compensation court awarded Cummings compensation for a 5-percent disability resulting from a series of work-related accidents in 1992 and 1993 which exacerbated Cummings' back injury from a prior, compensated, work-related accident in 1984. The compensation court further denied Cummings' claim for psychological injuries resulting from the 1992 and 1993 accidents. Cummings appealed to the panel, alleging that the compensation court was clearly wrong in relying on particular medical evidence in assessing his disability; that his disability should not have been apportioned between the prior, compensated injury and the new injuries; and that the court was clearly wrong in denying compensation for the alleged psychological injuries. The panel affirmed the judgment of the compensation court.

Because we find that the compensation court was not clearly wrong in assessing Cummings' disability from the 1992 and 1993 series of accidents at 5 percent or in denying compensation for the alleged psychological injuries, and because we find that the compensation court did not err in apportioning Cummings' disability between the prior, compensated accident and the new accidents, we affirm the judgment of the panel affirming the order of the compensation court.

## II. BACKGROUND

Cummings is, and was at all times relevant to these proceedings, employed by Omaha Public Schools. In August 1984, Cummings injured his back in a work-related accident. As a result of that accident, Cummings received a lump-sum settlement award based upon a 25-percent disability to his body as a whole. Subsequent to the settlement, Cummings returned to work at a salary equal to or greater than his salary prior to the accident.

On June 1, 1992, Cummings was injured at work when ceiling tiles fell onto him, causing injury to his back and exacerbating his prior back condition. On November 10, Cummings suffered another injury at work when a chair rolled out from under him, causing additional injury to his back and additional exac-

erbation of his back condition. On March 1, 1993, Cummings fell on ice in the parking lot at work, causing additional injury to his back and additional exacerbation of his back condition. On April 30, Cummings was involved in an altercation at work between a student and a security guard, causing additional injury to his back and additional exacerbation of his back condition. Finally, on November 23, Cummings suffered a back spasm at work which caused him to fall to his knees, additionally exacerbating his back condition.

On June 13, 1994, Cummings filed a petition in the Workers' Compensation Court, seeking compensation for the series of accidents. Cummings alleged temporary total disability, emotional and psychological injuries, and loss of earning capacity. On June 27, Omaha Public Schools and its workers' compensation insurance carrier filed an answer.

On October 17, 1994, a hearing was held before the compensation court. At trial, the parties stipulated that Cummings was injured in a series of work-related accidents, that there was no controversy regarding payment of temporary total disability benefits, and that the only issues remaining at trial concerned Cummings' loss of earning capacity. At trial, Cummings offered evidence, including a medical report and a vocational rehabilitation report, concerning his injuries and loss of earning capacity. Omaha Public Schools and its insurer objected to the admissibility of the two reports, arguing that they had not been timely disclosed and that the medical report was not properly characterized as a rebuttal report. The compensation court sustained the objections to the two exhibits.

The compensation court received other evidence and heard testimony from Cummings and two employees of Omaha Public Schools. Included in the admitted evidence was a medical report from Dr. Lonnie Mercier, who examined Cummings in August 1993. Mercier's examination occurred prior to the back spasm incident in November 1993. The evidence also indicated that an MRI was performed on Cummings sometime after the November 1993 incident and that the MRI was not considered in Mercier's report or conclusions.

On November 8, 1994, the compensation court entered an award in favor of Cummings. The compensation court found

that the series of injuries occurred in the course and during the scope of Cummings' employment with Omaha Public Schools and that Cummings was entitled to workers' compensation benefits. The compensation court awarded 10 weeks of temporary total disability benefits. The compensation court further determined that Cummings had suffered a 5-percent loss of earning capacity from the series of injuries and the exacerbation of his prior back condition. The compensation court specifically noted that the determination concerning Cummings' loss of earning capacity was based heavily on Mercier's report. Additionally, the compensation court found that Cummings failed to satisfy his burden of proof regarding the alleged psychological injuries and denied compensation for them. Finally, the compensation court declined to award vocational rehabilitation benefits.

On November 14, 1994, Cummings filed an application for review of the compensation court's award by the panel. Cummings assigned as error the compensation court's reliance on Mercier's report rather than the objective MRI results; the compensation court's acceptance of particular vocational rehabilitation opinions; the compensation court's refusal to accept the two proffered reports into evidence; the compensation court's apportionment of Cummings' disability between his prior, compensated injury and the new series of injuries; the compensation court's denial of any compensation for alleged psychological injuries; and the compensation court's specific finding that Cummings could obtain the same or a similar salary from a different employer if his employment with Omaha Public Schools was for some reason ended.

On March 21, 1995, the panel affirmed the compensation court's award in all respects except concerning the compensation court's ruling on the admissibility of the two reports offered by Cummings. The panel ruled that the exhibits should not have been excluded on the basis upon which the compensation court excluded them, and the panel remanded the case on the limited issue of loss of earning capacity.

On May 5, 1995, the compensation court entered an order on remand. The compensation court noted that the exhibits had been received and that all of the evidence had been reconsidered. The compensation court once again concluded that Cummings' loss of earning capacity from the series of accidents was 5 percent.

On May 19, 1995, Cummings filed another application for review of the compensation court's opinion. Cummings assigned the same six errors as in his first application for review, except with regard to the previous assignment concerning the admissibility of the exhibits. In place of that assigned error, Cummings assigned as error that the compensation court's ruling was contrary to the evidence.

On April 24, 1995, the panel entered an order. The panel held that the assignments of error which had been previously rejected on the first review were not reviewable a second time, because of the law-of-the-case doctrine. With regard to the new assignment of error, the panel affirmed the compensation court's findings. Cummings timely appealed from that order.

In our decision in that appeal, *Cummings v. Omaha Public Schools*, 5 Neb. App. 391, 558 N.W.2d 601 (1997), we reversed the judgment of the panel and remanded the case with directions to the panel to reconsider Cummings' assigned errors concerning Mercier's report, the vocational rehabilitation report, and apportionment. On remand, the panel reconsidered the assigned errors and affirmed the decision of the compensation court. This timely appeal followed.

### III. ASSIGNMENTS OF ERROR

On appeal, Cummings has assigned five errors, which we have consolidated for discussion to three. First, Cummings asserts that the compensation court was clearly wrong to rely on Mercier's opinions and the vocational rehabilitation report based on Mercier's opinions instead of relying on the objective MRI results. Second, Cummings asserts that the compensation court was clearly wrong in apportioning his disability between the prior, compensated injury and the series of new injuries. Third, Cummings asserts that the compensation court was clearly wrong in not compensating him for his alleged psychological injuries.

### IV. ANALYSIS

#### 1. LOSS OF EARNING CAPACITY

Cummings first asserts that the compensation court was clearly wrong in relying on Mercier's opinions and in relying on the vocational rehabilitation report based on Mercier's opinions

in determining Cummings' loss of earning capacity. Cummings asserts that the compensation court was clearly wrong because Mercier examined Cummings prior to the final incident, the November 1993 back spasm, and prior to the MRI that was performed on Cummings' back.

A determination as to an injured worker's loss of earning capacity is a question of fact to be determined by the Workers' Compensation Court. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996). If the record in a workers' compensation case presents conflicting medical reports and testimony, an appellate court will not substitute its judgment for that of the compensation court regarding which medical evidence to rely upon. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). The compensation court is entitled to accept the opinion of one medical expert over that of another, and as the sole trier of fact, the compensation court is the sole judge of the credibility of the medical evidence and the weight to be given to it. See *Kerkman v. Weidner Williams Roofing Co., supra.*

The Nebraska Supreme Court has held that the Workers' Compensation Court is not bound by the opinions of medical experts. *Paulsen v. State, supra.* As such, it is up to the compensation court to determine which, if any, of the expert witnesses to believe. *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996). The court is free to believe or disbelieve any of the medical evidence presented. See *id.*

In the present case, Mercier's report indicated a medical opinion that Cummings had suffered a 5-percent impairment as a result of the series of accidents. Additionally, the testimony of a vocational rehabilitation counselor whose report was based in part on Mercier's opinion indicated that Cummings' loss of earning capacity from the series of accidents was "insignificant."

Cummings asserts that the compensation court was clearly wrong to rely on Mercier's opinions and the vocational rehabilitation report because Mercier's examination of Cummings was prior to the November 1993 back spasm incident and failed to consider an MRI of Cummings' back performed after Mercier's examination. Cummings argues that the compensation court should have relied upon the objective MRI results in assessing the loss of earning capacity.

We note that Cummings did not present any evidence to suggest that the November 1993 back spasm incident had any significant impact on his loss of earning capacity which would make Mercier's examination and results somehow inaccurate. Additionally, our examination of the medical and vocational rehabilitation reports in the record indicates that Cummings' loss of earning capacity attributable to this series of accidents was uniformly assessed at between 5 and 10 percent. This includes the report of a rehabilitation counselor whose report was admitted into evidence on Cummings' behalf on remand from the panel's first review.

Cummings also argues that the compensation court was clearly wrong in finding that he could obtain the same or a similar salary from another employer if his employment relationship with the school ended. One of the vocational rehabilitation counselors testified that Cummings' *disability* will not prevent him from achieving a similar salary elsewhere and that any difficulties he might incur are the result of his attitude and interpersonal skills. As such, there is competent evidence in the record to support the compensation court's factual determination.

We are precluded from substituting our view of the facts for that of the Workers' Compensation Court if the record contains evidence to substantiate the factual conclusions reached by the court. Neb. Rev. Stat. § 48-185 (Reissue 1993); *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996). In addition, we note that the compensation court is not required to depend on any expert evidence to assess the degree of a claimant's disability and loss of earning capacity, but may instead rely solely on the testimony of the claimant to arrive at a conclusion. *Cords v. City of Lincoln, supra.* In light of the abundance of competent evidence in the record to support the compensation court's assessment of Cummings' loss of earning capacity at 5 percent, we cannot say that the court was clearly wrong. This assigned error is without merit.

### 2. Apportionment

Cummings argues that the compensation court erred in apportioning his total disability between the prior, compensated

injury and the series of new injuries. Although the compensation court's order specifically states that it "has not apportioned the impairment," the compensation court did limit Cummings' award to compensation for only the disability caused by the 1992 and 1993 injuries or the aggravation of his prior condition, rather than for the original disability caused by the prior, compensated injury. As a result, despite the compensation court's specific indication otherwise, it appears that the compensation court did, in fact, apportion Cummings' disability.

(a) Apportionment in Present Case

In support of his argument that apportionment is improper, Cummings cites the Nebraska Supreme Court's opinion in *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), and this court's decision in *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994). We do not find either case to prohibit apportioning a claimant's recovery for disability between a prior, compensated injury to the body as a whole and a subsequent compensable injury to the body as a whole.

In *Heiliger v. Walters & Heiliger Electric, Inc., supra*, the Supreme Court noted that a claimant is entitled to full compensation, notwithstanding the fact that his present disability may be the result of an aggravation of a preexisting injury or condition. The court further indicated that, on the facts of *Heiliger*, apportionment was irrelevant because there was no claim against the Second Injury Fund. *Heiliger* is distinguishable from the present case, however, because the claimant in *Heiliger* had not been compensated for the prior injury or the disability resulting therefrom. As such, *Heiliger* does not stand for the proposition that a claimant who has once received compensation for disability occasioned by a prior injury is entitled to be compensated again for the original disability when a subsequent injury exacerbates the prior disability.

In *Jacob v. Columbia Ins. Group, supra*, this court discussed apportionment and applied apportionment to a factual situation involving injuries to separate but related members, rather than injuries to the body as a whole. We held that " '[t]o be apportionable, then, an impairment must have been indepen-

dently producing some degree of disability before the accident, and must be continuing to operate as a source of disability after the accident.' " 2 Neb. App. at 491, 511 N.W.2d at 221. In terms of this test for determining when apportionment is appropriate, the term "disability" contemplates impairment of earning capacity, not functional disability. *Id.* Additionally, we noted that the problem of apportionment may be encountered between an employer and an employee when disability from a prior injury contributes to a claimant's total disability following a subsequent injury. *Id.*

On the facts of *Jacob*, we held that it was not appropriate to apportion a claimant's disability between a prior work-related accident where the claimant lost a finger and a subsequent work-related accident where he essentially lost his entire hand. Because both injuries were injuries to members, rather than injuries to the body as a whole, the claimant did not suffer any disability in terms of loss of earning capacity, as distinguished from functional disability, from the prior injury, and the award which he received for the prior injury did not need to be deducted from the disability benefits for which he was entitled as a result of the subsequent injury. See *id.*

Applying the facts of the present case to the test established in *Jacob* for determining the appropriateness of apportionment reveals that the compensation court did not err in apportioning Cummings' disability between the prior, compensated injury and the subsequent series of injuries. Cummings' prior back injury independently produced some degree of lost earning capacity, as indicated by his prior award of benefits for a 25-percent loss of earning capacity resulting from the prior accident. Additionally, the prior disability is continuing to act as a source of lost earning capacity even after the subsequent series of accidents.

As such, because Cummings was already compensated for the prior disability, he is not entitled to receive compensation now beyond whatever additional disability can be attributed to the subsequent series of injuries or its aggravation of his prior condition. He is not entitled to be compensated again for the original 25-percent disability caused by the prior injury. The evidence in the record uniformly indicates that Cummings is

entitled to benefits for a 5-percent loss of earning capacity caused by the subsequent series of injuries and its aggravation of his prior condition.

(b) *Jacob* and Double Recovery

Our holding in the present case is consistent with the holding and the test established in *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994). Nonetheless, we feel compelled to address the discussion of "double recovery," the Second Injury Fund, and the Supreme Court's opinion in *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984), which discussion is found in *Jacob, supra*. In *Jacob*, this court noted that the significant point about the Second Injury Fund statute, Neb. Rev. Stat. § 48-128 (Reissue 1993), is that a claimant's benefits are not decreased because of a preexisting condition that has been compensated for. This statement was not intended to indicate that the Second Injury Fund statute contemplates that an employee is entitled to a *double recovery* for a prior, compensated injury, but, rather, to indicate that an employee is not precluded from recovering benefits for *additional* disability which is the result of an aggravation of a preexisting condition simply because he has already been compensated for the preexisting condition and the original disability.

Additionally, in *Jacob* we indicated that allocating the claimant's present disability between his preexisting condition and his subsequent condition was "prohibited." 2 Neb. App. at 488, 511 N.W.2d at 220. On the facts of *Jacob*, where there was no loss of earning capacity from the prior injury, apportionment *was* prohibited. That is not to say, however, that apportionment is necessarily prohibited in all cases.

In *Jacob*, we also discussed the Supreme Court's opinion in *Benson v. Barnes & Barnes Trucking, supra.* We noted that the Supreme Court affirmed the compensation court's dismissal of the Second Injury Fund, but remanded the case for a determination of the extent of the employer's liability. Although we recognized that double recovery was not chiefly at issue in *Benson*, we concluded that because the Supreme Court did not attempt to decrease the claimant's benefits despite the fact that he had already been compensated for a 37-percent loss of earning capacity from a prior injury, the Supreme Court was not "both-

ered" by the concept of double recovery in compensation cases. *Jacob v. Columbia Ins. Group*, 2 Neb. App. at 489, 511 N.W.2d at 220.

A closer reading of *Benson, supra*, however, indicates that the Supreme Court actually remanded the case with directions that the compensation court enter an award in favor of the claimant "consistent with th[e] opinion." 217 Neb. at 876, 354 N.W.2d at 134. We find nothing in *Benson* which indicates that a claimant is entitled to *double recovery*. Rather, we read the Supreme Court's discussion of the division of liability between the Second Injury Fund and the employer as concerning only the disability caused by the subsequent injury and the aggravation of the prior injury, rather than concerning a second compensation for the original disability itself. It does not appear that the Supreme Court was presented with the specific issue of whether the disability should have been apportioned between the prior, compensated injury to the body as a whole and the subsequent injury and aggravation of the prior injury.

Notwithstanding the fact that we now conclude that *Benson* does not indicate any approval by the Supreme Court of double recovery, we do not believe that our current reading of *Benson* undermines our previous holding in *Jacob v. Columbia Ins. Group*, 2 Neb. App. 473, 511 N.W.2d 211 (1994). The overriding factor in *Jacob* was that the prior injury did not result in any loss of earning capacity, and apportionment was therefore inappropriate. *Jacob* is not inconsistent with either *Benson v. Barnes & Barnes Trucking*, 217 Neb. 865, 354 N.W.2d 127 (1984), or our decision today, however, because *Benson* and the present case are both cases in which the prior injury was an injury to the body as a whole which *did* result in loss of earning capacity.

### 3. PSYCHOLOGICAL INJURIES

Cummings next asserts that the compensation court was clearly wrong in not compensating him for the psychological injuries caused by his series of work-related accidents. The compensation court found that Cummings failed in his burden of proof to show by a preponderance of evidence that he suffered any psychological injury either as a result of the series of accidents or as a result of the aggravation of the prior injury.

The compensation court found that the cause of his psychological problems, if any, was not related to any work-related accident, but, rather, that the problems were the result of job conditions and job stress.

■ Psychological injuries are compensable, under certain circumstances, in Nebraska workers' compensation cases. See, *Kraft v. Paul Reed Constr. & Supply*, 239 Neb. 257, 475 N.W.2d 513 (1991); *Sorensen v. City of Omaha*, 230 Neb. 286, 430 N.W.2d 696 (1988). However, the burden to prove that a psychological disability is the result of a work-related accident is on the claimant. *Kraft v. Paul Reed Constr. & Supply, supra.* Further, a determination of whether a particular disability was caused by a work-related accident is a question for the trier of fact, whose factual findings will be upheld unless clearly wrong. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996).

In the present case, the record reveals that at least one psychiatric evaluation resulted in a conclusion that Cummings did not even suffer from any disabling psychological condition. To the extent there is some other evidence in the record to indicate that Cummings may suffer from psychological problems, we can find no evidence which establishes a causal link between any psychological disability and any of the accidents. On the record before us, we cannot say that the court was clearly wrong. This assigned error is without merit.

4. RESOLUTION

■ Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless they are clearly wrong. *Kerkman v. Weidner Williams Roofing Co., supra*; *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996); *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Pettit v. State*, 249 Neb. 666, 544 N.W.2d 855 (1996); *Dougherty v. Swift-Ekrich, Inc.*, 4 Neb. App. 653, 547 N.W.2d 522 (1996).

■ A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the court acted without or in excess of its powers; (2) the judgment, order, or award was procured by

fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact made by the court do not support the judgment, order, or award. *Berggren v. Grand Island Accessories, supra*; *Cords v. City of Lincoln, supra*; *Cox v. Fagen, Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996); *Pettit v. State, supra*; *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). Furthermore, when testing the sufficiency of the evidence in the record to support the findings of fact made by the court, the evidence must be considered in the light most favorable to the successful party. *Kerkman v. Weidner Williams Roofing Co., supra*; *Berggren v. Grand Island Accessories, supra*; *Cords v. City of Lincoln, supra*; *Pettit v. State, supra*; *Paulsen v. State, supra*; *Dougherty v. Swift-Ekrich, Inc., supra*.

As in other cases, an appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law, independent of the conclusions of the lower court. *Berggren v. Grand Island Accessories, supra*; *Wilson v. Larkins & Sons*, 249 Neb. 396, 543 N.W.2d 735 (1996).

In accordance with this standard of review, we cannot say that the findings of the panel affirming the compensation court's judgment are clearly wrong. Viewing the evidence in a light most favorable to Omaha Public Schools and its insurer, we conclude that there was sufficient evidence to support the decision of the compensation court. Finally, we conclude that it was appropriate for the compensation court to apportion Cummings' disability. Cummings' assigned errors are without merit.

## V. CONCLUSION

Because we find that the compensation court was not clearly wrong in its assessment of Cummings' loss of earning capacity or in denying compensation for Cummings' alleged psychological injuries, and because we find it was appropriate for the compensation court to apportion Cummings' disability between the prior, compensated accident and the new accidents, we affirm the judgment of the Workers' Compensation Court review panel affirming the order of the compensation court.

AFFIRMED.