IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

KEMPNICH V. MR. BULTS, INC.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DONALD KEMPNICH, APPELLANT,
V.
MR. BULTS, INC., AND ZURICH AMERICAN INSURANCE COMPANY, APPELLEES.

Filed January 21, 2014.    No. A-13-305.

Appeal from the Workers' Compensation Court: THOMAS E. STINE, Judge. Affirmed.

Larry E. Welch, Sr., and Larry E. Welch, Jr., of Welch Law Firm, P.C., for appellant.

Gregory D. Worth, of McAnany, Van Cleave & Phillips, P.C., for appellees.

INBODY, Chief Judge, and PIRTLE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Donald Kempnich appeals the decision of the Nebraska Workers' Compensation Court, which found that he sustained a 75-percent loss of earning capacity as a result of his workplace injuries and awarded him temporary total and permanent partial disability benefits, future medical expenses, and attorney fees. Kempnich argues that the compensation court erred in determining his employability. For the reasons set forth below, we affirm.

## BACKGROUND

Kempnich was employed by Mr. Bults, Inc., as a truckdriver, transporting semi-trailer loads of garbage from transfer stations to landfills. On July 14, 2009, Kempnich was on top of a semi-trailer attempting to secure a tarp over a load of garbage when he fell 10 to 15 feet and struck his head on the pavement. A coworker found him lying beside the truck with a pool of blood under his head. Kempnich was taken by ambulance to an emergency room and was diagnosed with multiple skull fractures, a subdural hematoma, and an intracranial hemorrhage. Kempnich underwent emergency surgery, including a decompressive craniectomy and

evacuation of the hematoma and hemorrhage. He remained hospitalized for 2 weeks and received both inpatient and outpatient rehabilitation services for some time thereafter. Kempnich's brain injuries resulted in cognitive and behavioral defects and partial vision loss, which required ongoing treatment and therapy. He also developed carpal tunnel syndrome in his right hand as a result of the fall, which required corrective surgery.

Mr. Bults, Inc., and its workers' compensation insurance carrier, Zurich American Insurance Company (collectively Mr. Bults), paid for the majority of Kempnich's medical expenses and provided total temporary disability benefits until February 2012. In March, Kempnich filed a petition in the Nebraska Workers' Compensation Court seeking total permanent disability benefits. The parties stipulated that Kempnich's injuries arose out of and in the course and scope of his employment, that notice of Kempnich's injury was timely, that jurisdiction and venue were proper, and that Kempnich's average weekly wage was $896.51. The parties went to trial for a determination regarding the nature and extent of Kempnich's injuries, whether he had reached maximum medical improvement, whether he was entitled to payment for future medical expenses, the amount of disability benefits owed, and whether he was entitled to attorney fees.

Kempnich testified at trial regarding his education and prior work history. Kempnich graduated from high school in 1975 and then spent 4 years as a deckhand in the U.S. Coast Guard. His work history consists mostly of commercial truckdriving since 1987, although he spent a short amount of time cutting down trees, building fencing, working as a pipefitter, and working for his father's auto body shop and moving company. Kempnich testified that he currently lives near Plattsmouth, Nebraska, which is approximately 23 miles from Omaha, Nebraska.

The parties jointly offered exhibits 1 through 45 at trial, which contain medical records and reports from various doctors and vocational experts. We have thoroughly reviewed all of the exhibits presented at trial, but will discuss only those that are directly relevant to the issues raised in this appeal.

Dr. Morgan LaHolt was hired by Mr. Bults to conduct an independent medical evaluation of Kempnich. Dr. LaHolt examined Kempnich initially on March 18, 2011, and issued a written report detailing his findings. He diagnosed Kempnich as having a severe traumatic brain injury with (1) vision problems; (2) cognitive difficulties, including executive dysfunction, short-term memory loss, and slowed processing speed; (3) mood issues, including emotional lability with occasional anger outbursts; and (4) fatigue. Dr. LaHolt opined that Kempnich had not yet reached maximum medical improvement due to the need for further visual testing, another driver's evaluation, additional speech therapy, and psychological treatment and medication.

Regarding Kempnich's permanent restrictions, Dr. LaHolt advised that Kempnich should not lift more than 30 pounds, should avoid climbing activities, and should not operate a motor vehicle. Dr. LaHolt stated that Kempnich would never again be able to drive commercially due to cognitive and vision issues and that Kempnich would be severely limited in his ability to multitask, but should be able to perform a single duty at a time with close supervision. Dr. LaHolt indicated that supervision may be decreased once Kempnich has developed a routine, but that any change in his job duties would again warrant close supervision. Dr. LaHolt opined that Kempnich should be limited to 6 hours of work per day due to fatigue, because working more

than 6 hours without a significant rest break would risk further cognitive decline. However, Dr. LaHolt iterated that Kempnich had not yet reached maximum medical improvement and stated that formal permanent restrictions should be addressed at that time.

Dr. Richard Bowles conducted a neuropsychological evaluation of Kempnich on November 2, 2011. Dr. Bowles noted that, from a functional perspective, Kempnich "can probably perform many of the tasks that were part of his past repertoire, although he is likely to be less efficient due to slowness especially with visually mediated tasks and difficulty with planning, organizing and executing his responses." From a vocational point of view, Dr. Bowles felt that Kempnich had good potential for rehabilitation based on his cognitive capacities, but noted that the behavioral issues associated with his injury could compromise his capacity for competitive employment. For example, Dr. Bowles stated that although Kempnich may understand a set of instructions and have the ability to carry them out, he may not think to do so and may need cueing to perform consistently. According to Dr. Bowles, Kempnich would be best suited doing repetitive tasks that do not require significant decisionmaking in an environment where he could be consistently supervised.

Kempnich underwent a functional capacity evaluation to assess his nonmaterial handling capabilities. A written summary of the test results, dated January 6, 2012, provides "safe guidelines for [Kempnich's] work activities on a full time basis." Kempnich demonstrated the ability to lift and carry 30 pounds on an occasional basis, and 20 pounds on a frequent basis, without significant difficulty. It was determined that Kempnich was capable of safely performing work activities within the light-medium physical demand level, but should be restricted from ladder climbing and working at unprotected heights due to mild balance deficits. Kempnich did not display significant limitations in other nonmaterial handling activities, such as sitting, standing, walking, stair climbing, and squatting.

On January 23, 2012, Kempnich's rehabilitation physician, Dr. Kip Burkman, recommended that Kempnich be released to work within the restrictions set forth in the functional capacity evaluation, but added that Kempnich needed a safe working environment without moving vehicles or moving machinery.

Dr. Richard Legge, a specialist in neuroopthalmology, diagnosed Kempnich with partial vision loss in the upper left-hand quadrant of Kempnich's visual field in both eyes, due to trauma. Dr. Legge placed Kempnich at maximum medical improvement as of April 11, 2012. Dr. Legge stated that Kempnich was employable with respect to his visual system, but recommended that he be restricted from operating a commercial motor vehicle, working at heights greater than 6 feet, and operating power tools.

Kempnich hired Gail Leonhardt, a vocational rehabilitation expert, to render an opinion regarding Kempnich's loss of earning capacity. In a report dated April 2, 2012, Leonhardt analyzed only two of the four factors that are customarily used in assessing earning capacity and concluded that Kempnich suffered a total loss of earning capacity. Leonhardt acknowledged that Kempnich was capable of performing some unskilled entry-level jobs, but determined that he was precluded from all competitive employment due to his 6-hour-workday restriction and his need for special supervision to remain on task.

Subsequent to Leonhardt's earning capacity assessment, Dr. LaHolt conducted a second independent medical evaluation of Kempnich on April 18, 2012, at which point he placed

Kempnich at maximum medical improvement. Dr. LaHolt allocated a 17-percent impairment of the whole person in regard to Kempnich's traumatic brain injury. He concurred with the work restrictions set forth in the functional capacity evaluation, but added the following limitations:

> From a cognitive standpoint, [Kempnich] will need support by receiving both written and verbal instructions and will likely need some increased cueing to perform these tasks consistently. He would have some difficulties with multitasking and would recommend that he be allowed to stay on one task at a time. I would also avoid loud areas of employment which would also further worsen his ability to concentrate and focus on work tasks.

Dr. LaHolt did not include a restriction on Kempnich's work hours in his second report.

Rehabilitation consultant, David Utley, was hired by Mr. Bults to perform a rebuttal loss of earning capacity assessment shortly before trial. Utley stated that although Kempnich is unable to return to any of his past employment settings, his educational level and work experience make him a candidate for various alternate jobs, so long as the following accommodations are provided: (1) limit material handling activities to the light-medium physical demand level; (2) limit balancing to an occasional basis; (3) avoid ladder climbing and working at unprotected heights; (4) provide both written and verbal instructions, and additional cueing when needed; (5) allow completion of one task at a time; and (6) avoid exposure to loud noises and multiple background conversations. Utley indicated that no restrictions had been placed upon Kempnich's work hours and concluded that Kempnich sustained a 50-percent loss of earning capacity as a result of his work injuries. Utley criticized Leonhardt's assessment on the basis that it was completed prior to Dr. LaHolt's second evaluation of Kempnich and, therefore, was formulated without considering all of the relevant medical evidence.

Based on the evidence presented, the compensation court found that Kempnich suffered the following injuries as a result of his workplace accident on July 14, 2009: (1) severe acquired brain injury, right acute subdural hematoma, and organic brain dysfunction secondary to trauma, with resulting cognitive disorder and impairment; (2) left superior temporal quadrantanopsia, secondary to traumatic right temporal lobe injury; and (3) right carpal tunnel syndrome. The compensation court further found that Kempnich reached maximum medical improvement on April 11, 2012; that he sustained a 17-percent impairment to his body as a whole as a result of the traumatic brain injury; and that he suffered a 75-percent permanent loss of earning capacity. It awarded future medical expenses for reasonably necessary psychiatric and psychological treatment, total temporary and permanent partial disability benefits, and attorney fees. Kempnich timely appeals.

## ASSIGNMENTS OF ERROR

Kempnich assigns three errors on appeal. He alleges the compensation court erred by (1) finding that he is employable for 8 hours per day, when he is medically restricted from working more than 6 hours per day; (2) finding that his failure to obtain employment was due to lack of motivation; and (3) failing to consider his severe cognitive defects and age when determining his ability to compete for employment in his "hub labor market."

We will not address Kempnich's second assignment of error because he has failed to provide any argument in support of it. See *In re Estate of Cushing*, 283 Neb. 571, 810 N.W.2d

741 (2012) (to be considered by this court, alleged error must be both specifically assigned and specifically argued in brief of party asserting error). Because Kempnich's remaining assignments of error are related, we will address them together.

## STANDARD OF REVIEW

On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Clark v. Alegent Health Neb.*, 285 Neb. 60, 825 N.W.2d 195 (2013). If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Id.* An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Id.*

## ANALYSIS

Kempnich's overarching argument on appeal is that the compensation court erred in finding that Kempnich is employable for 8 hours per day, because such finding contradicts the 6-hour-workday restriction imposed by Dr. LaHolt. Kempnich asserts in his brief that the compensation court was required to accept Dr. LaHolt's medical restriction, because Dr. LaHolt's report was offered by joint stipulation of the parties and his opinion was not contradicted by any other medical evidence. Kempnich further argues that his 6-hour-workday restriction, when considered in conjunction with the fact that he must travel to Omaha to obtain employment, precludes all competitive employment and renders him totally disabled.

A determination as to an injured worker's loss of earning capacity is a question of fact to be determined by the Workers' Compensation Court. *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 574 N.W.2d 533 (1998). In testing the sufficiency of the evidence to support the findings of fact by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party, every controverted fact must be resolved in favor of the successful party, and the successful party will have the benefit of every inference that is reasonably deducible from the evidence. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013).

Here, the compensation court found, in relevant part, as follows:

The Court believes that the greater weight of the evidence indicates [Kempnich] is employable for 8 hours per day, and that he has sustained a substantial loss of earning capacity as a result of his injuries. . . . After having an opportunity to view [Kempnich] at trial, and after reviewing the medical and vocational evidence, the Court finds [Kempnich] sustained a 75 percent loss of earning capacity as a result of all the injuries arising out of the work accident.

We conclude that the record contains sufficient evidence to support these findings. Although Dr. LaHolt recommended a 6-hour-workday restriction in his initial report on March 18, 2011, he specifically stated that Kempnich had not yet reached maximum medical improvement and that permanent restrictions would need to be addressed at that time. Upon reexamining Kempnich nearly 1 year later on April 18, 2012, Dr. LaHolt determined that Kempnich had reached maximum medical improvement and concurred with the restrictions set

forth in the functional capacity evaluation dated January 6, 2012. Significantly, the functional capacity evaluation stated that it represented safe guidelines for Kempnich's work activities on a full-time basis. Dr. LaHolt did not recommend any type of restrictions on Kempnich's working hours in his second report, nor did any of the other doctors or experts that evaluated Kempnich, with the exception of Leonhardt, who rendered his loss of earning capacity opinion prior to Dr. LaHolt's second examination. Viewing this evidence in the light most favorable to Mr. Bults, we cannot say that the compensation court was clearly wrong in finding that Kempnich was employable for 8 hours per day.

Kempnich argues that the compensation court was required to accept Dr. LaHolt's 6-hour-workday restriction because his report was offered by joint stipulation of the parties and his opinion was not contradicted by any other medical evidence. We disagree. First, the fact that the medical records were offered jointly does not mean the parties stipulated to the expert opinions contained therein; it simply means that the parties had no objection to the admission of the evidence for the court's consideration. The stipulations of the parties were specifically set forth in the amended joint pretrial memorandum and did not include a stipulation to Dr. LaHolt's opinion. Second, the Workers' Compensation Court is not bound by the opinions of medical experts, regardless of whether they are contradicted or not. *Cummings v. Omaha Public Schools*, 6 Neb. App. 478, 574 N.W.2d 533 (1998). It is up to the compensation court to determine which, if any, of the expert witnesses to believe, and the court is free to believe or disbelieve any of the medical evidence presented. *Id.* Furthermore, as previously discussed, Dr. LaHolt abandoned his initial 6-hour-workday restriction upon reevaluating Kempnich and placing him at maximum medical improvement. We find no merit to these arguments.

Finally, Kempnich argues in his brief that the compensation court failed to consider the impact of the 6-hour-workday restriction on his ability to compete for employment in the Omaha labor market. We agree that a shortened workday impacts an individual's access to jobs, especially when he or she must commute to a neighboring community to obtain employment. See *Giboo v. Certified Transmission Builders*, 275 Neb. 369, 746 N.W.2d 362 (2008). However, because we have concluded that the evidence supports the compensation court's finding that Kempnich is employable for 8 hours per day, we need not address the impact that a shortened workday might have had on Kempnich's employability.

To the extent that Kempnich is arguing that Omaha is not the appropriate labor market for assessing his earning capacity, we decline to address his argument because it was not raised in the compensation court. See, *Gibbs Cattle Co. v. Bixler*, 285 Neb. 952, 831 N.W.2d 696 (2013) (appellate court will not consider issue on appeal that was not presented to or passed upon by trial court); *Walsh v. State*, 276 Neb. 1034, 759 N.W.2d 100 (2009) (lower court cannot commit error in resolving issue never presented and submitted to it for disposition). We note there was evidence adduced regarding the population of the two towns closest in proximity to Kempnich's residence and the distance to those towns, but neither the petition, the amended joint pretrial memorandum, nor the award reference an issue regarding the appropriate hub labor market. Furthermore, we find no expert evidence adduced that Plattsmouth should be the primary community from which to conduct an assessment of Kempnich's earning capacity or that it would be impractical for Kempnich to accept employment in the area of Omaha and/or Council Bluffs, Iowa.

- 6 -

## CONCLUSION

Because we find sufficient evidence to support the compensation court's award, we affirm.

AFFIRMED.